BRONX GAS AND ELECTRIC Co., Plaintiff, *v.* PUBLIC
SERVICE COMMISSION, THE ATTORNEY-GENERAL, THE
DISTRICT ATTORNEY OF BRONX COUNTY, THE CITY OF
NEW YORK, and Representatives, Customers and
Consumers of Plaintiff's Gas, Defendants.

(Supreme Court, New York Special Term, July, 1919.)

Injunctions — preliminary — gas companies — statutes — when
motion for injunction denied.

> Where in an action by a gas company to procure a decree
> that at the present time the statutes fixing the maximum price
> of one dollar per 1,000 cubic feet for gas to the general public
> and seventy-five cents to the city of New York are confiscatory
> and unconstitutional, the plaintiff makes out a sufficiently con-
> vincing *prima facie* case to justify the court in granting a pre-
> liminary injunction restraining the enforcement of the statutory
> rate, the injunction may be granted with appropriate inci-
> dental relief, the plaintiff to give a bond sufficient for the
> protection of the consumers.

> But where on the argument for the motion for the injunction
> plaintiff's counsel, after stating again and again that he was
> not seeking a mere declaration that the statutory rate was con-
> fiscatory but insisted upon fixation by the court of a dollar
> and a half rate to the general public or such other rate as the
> court might fix as reasonable, and repeatedly stated that any
> decree that fell short of fixing a rate would not serve the pur-
> pose of plaintiff and afford no adequate relief, the motion for
> an injunction will be denied.

ACTION for an injunction. Motion for a preliminary
injunction.

Atwater & Cruikshank (Alfred B. Cruikshank, of
counsel), for plaintiff.

Godfrey Goldmark, for public service commission.

Charles D. Newton, attorney-general.

Francis Martin, in person, district attorney of Bronx county.

William P. Burr, corporation counsel, for City of New York.

Mullan, J. The plaintiff is a gas and electric light company, operating exclusively in the borough of The Bronx, city of New York. The only restriction upon its price for gas is to be found in the statutes hereinafter referred to. On February 8, 1918, it petitioned the public service commission, first district, for leave to charge $1.50 per 1,000 cubic feet. On April 18, 1918, the petition was dismissed upon the stated ground that the commission was without power in the premises. The ruling of the commission was upheld by the Appellate Division on July 17, 1918 (*People ex rel. Bronx Gas & Elec. Co. v. Public Service Commission,* 185 App. Div. 891), the Court of Appeals having held, in the meantime, that the public service commission had no power to supersede the statutory rate. *People ex rel. Municipal Gas Co. v. Public Service Commission,* 224 N. Y. 156. On March 11, 1919, the plaintiff filed with the commission, and published, a notice that on and after April 11, 1919, its rate for gas to the general public would be $1.50 per 1,000 cubic feet. Thereafter it brought this action to procure a decree (1) declaring confiscatory and unconstitutional the statute (Laws of 1906, chap. 125) fixing $1 per 1,000 cubic feet as the maximum price for gas furnished to the general public; (2) declaring confiscatory and unconstitutional the statute (Laws of 1905, chap. 736) fixing 75 cents per 1,000 cubic feet as the maximum price for gas furnished to the city of New York; (3) declaring unconstitutional certain provisions of the Public Service Commissions Law allowing public service commissions

to fix the price of gas, and (4) enjoining (a) the defendants generally from enforcing the mentioned statutes, from collecting or attempting to collect penalties thereunder, from instituting civil or criminal proceedings thereunder, from interfering with plaintiff in the collection of a price of $1.50 per 1,000 cubic feet of its gas, or such price as to this court may seem reasonable; (b) the public service commission, first district, from the fixation of any rate or price to be charged by plaintiff for its gas, and from instituting any proceeding against plaintiff for that purpose, and (c) the defendant consumers of gas, customers of plaintiff, from prosecuting a proceeding instituted by them and pending before the public service commission, first district, to procure a reduction of the plaintiff's present price for its gas; and (5) granting other and incidental relief; and it now moves for an injunction, *pendente lite,* granting substantially all the relief it would be entitled to if it should prevail upon the trial. Plaintiff in its complaint and affidavits alleges that prior to January 1, 1917, the statutory rates were accepted by it, and sets out at length facts designed to show that the cost to plaintiff to make each 1,000 cubic feet of gas was, in 1917, $1.18442; in 1918, $1.37241; and in 1919, $1.39; and asserts that no rate less than $1.50 per 1,000 cubic feet will produce a reimbursement of cost and a reasonable profit. In the opposing affidavits of the defendants it is sought to show that the plaintiff's cost data are inaccurate and misleading; that the plaintiff's valuation of its investment in the gas business is grossly inflated, and that upon accurate cost data, and a fair appraisement of the investment, the statutory rate affords to plaintiff a reasonable profit. In respect of the actual cost of manufacture for 1918, it is claimed by the defendants (1) that the plaintiff's item of $.0626 per 1,000

cubic feet for legal services is excessive, in that in no former year did that item exceed $.004 per 1,000; (2) that the plaintiff's apportionment of taxes between its gas and electrical departments is unfair, in that it casts upon the gas department $.0586 per 1,000 more than its proper share of the burden; (3) that the plaintiff's leakage item of 37,552,670 cubic feet is unreasonably large, and amounts to 15.21 per cent, as against the 8 per cent leakage loss of other companies of nearly similar size in Greater New York, and that reasonable efficiency in controlling leakage would reduce the cost $.0453 per 1,000; (4) that the plaintiff's amortization reserve of $.12 per 1,000 is excessive to the extent of $.05 per 1,000, for the reason that the plaintiff actually expended $.07 per 1,000 for repairs and maintenance; (5) that plaintiff fails to offset against its operating cost the item of $.02 per 1,000 received by it as revenue from sources other than the sale of gas; and that the foregoing inaccuracies, misstatements, and omissions improperly increase the apparent cost for gas for 1918 by $.1819 per 1,000 feet. In the defendant's affidavits it is also sought to be shown that the plaintiff's valuation of its investment is excessive for the following reasons: (1) that included in the issued capital stock of $486,500, is an item of $216,000, representing a stock dividend; (2) that the appraisal of the plaintiff's property made by the public service commission in 1908 was excessive, and that the valuation at the end of 1918 of $900,000, based on that appraisal, and withdrawals therefrom and additions thereto, is consequently excessive. The defendants further endeavor to show that the plaintiff's claim of a right to a margin of profit of $.13 per 1,000 cubic feet for dividends and surplus is excessive to the extent of $.07 per 1,000, their argument being that no allowance should be made for a surplus during

**208**   Bronx Gas & El. Co. *v.* Pub. Serv. Comm.

Supreme Court, July, 1919.          [Vol. 108.

a period of abnormally high costs, and that a $.06 per 1,000 charge for dividends would suffice to pay a 7 per cent dividend on the plaintiff's investment properly appraised. In its replying affidavits the plaintiff answers the criticisms of its cost data by seeking to show (1) that its item for legal expenses was larger in 1918 than formerly, and will continue to be heavy, because of its necessity to procure judicial determination that it is not receiving a fair return; (2) that its tax apportionment was fair, attaching an itemized statement showing how the apportionment was made and the reasons therefor; (3) that the defendants' leakage criticism is unfair, as the companies held up as standards charge a purely arbitrary leakage and have a low actual leakage for the reason that they do not manufacture gas, and manufacturing companies in a similar situation to that of plaintiff have leakages varying between 10 and 18 per cent; (4) that the criticism of the size of the amortization reserve is unsound, for the reason that experience of ten years has shown that a reserve of $.12 per 1,000 cubic feet is needed, and the public service commission has recommended a reserve of $.15 per 1,000; the plaintiff remaining silent upon the criticism that it had not taken into account its revenue of $.02 per 1,000 cubic feet from sources other than the sale of gas. Replying to the criticism in respect of the valuation of its property, the plaintiff asserts that the stock dividend of $216,000 represented property, services and profits invested in its plant over a period of eight years, during which no dividends were paid; and that as the valuation of 1908 was the official appraisement of the public service commission, it is, at least *prima facie*, to be presumed to be a correct valuation, and that in point of fact it was less than the actual value of the property. It is the plaintiff's contention that even if

its stock had been watered, as defendants claim it was, but which assertion the plaintiff denies, that fact would have no relevancy, as the proper basis for a computation of profits is the present value of its investment. The plaintiff states that its outstanding obligations, stocks and bonds, amount to $1,677,500; that the book value of its investment at the close of 1918 was $1,813,316, without allowance for franchise or going-concern value, and including the land at its assessed valuation; that the lowest present valuation made by plaintiff's appraisers, added to the assessed land valuations, amounts to $2,404,009, and that it suffered a loss, in its gas department, in 1917, of $32,855.53, or $.16377 per 1,000 cubic feet, and in 1918 of $72,446.42, or $.34775 per 1,000 cubic feet. The conflicting claims and contentions of the plaintiff on the one hand, and of the public officials on the other, present questions of sufficient complexity to make impracticable at this time a detailed analysis or other extended treatment. It will suffice to say that considering the action as one brought to procure a decree declaring the fixation statutes unconstitutional at the present time, I am of opinion that the plaintiff has made out a sufficiently convincing *prima facie* case to compel me to grant a preliminary injunction restraining the enforcement of the statutory rate. I am, of course, restricted to merely superficial indicia, but these point very directly to the probability that the plaintiff has been suffering a loss in its gas business since January 1, 1917. The public official defendants point out that their examination of the plaintiff's figures was necessarily hasty and somewhat cursory, but even with the making of due allowance for the brevity and incompleteness of their investigation, their criticisms are not convincing, while the plaintiff's explanations of its questioned items seem, on their

face, to be reasonable and sound. It may, of course, very well be that upon a trial it could and will be shown that the plaintiff's figures are inaccurate and misleading, but, as I have said, I must confine myself to a conclusion based wholly upon the apparent situation disclosed by the papers. On these alone the plaintiff presents a strong case that is not substantially weakened by the opposing proofs. Nor can there be injected into the case the question whether the plaintiff's total business, which includes its electrical department, is or is not being conducted at a loss. That precise holding was made in *Municipal Gas Co.* v. *Public Service Commission,* 225 N. Y. 89. Neither is it a sufficient answer that, assuming the correctness of the plaintiff's figures, and that the statutory rate has been confiscatory since January 1, 1917, the period of loss has lain wholly within the period of the war, with its vast economic disturbances. Under the rule stated by Judge Cardozo in the *Municipal Gas Co.* case, I think that, at least " till all the evidence is in," a sufficient period of loss has been shown, regardless of its cause, and that, in respect of the future, prophecy must not be at the possible expense of the plaintiff. There is ample authority for granting *pendente lite* relief to a utility company in such a situation as that in which plaintiff apparently finds itself. *Chicago & N. W. R. Co.* v. *Dey,* 35 Fed. Repr. 866; *New Memphis Gas & L. Co.* v. *City of Memphis,* 72 id. 952; *Southern Pacific Co.* v. *Railroad Comm.,* 78 id. 236; *Indianapolis Gas Co.* v. *City of Indianapolis,* 82 id. 245; *Metropolitan Trust Co.* v. *Houston & T. C. R. R. Co.,* 90 id. 683; *Cleveland City Ry. Co.* v. *City of Cleveland,* 94 id. 385; *Western Union Tel. Co.* v. *Myatt,* 98 id. 335; *Kimball* v. *City of Cedar Rapids,* 99 id. 130; *Spring Valley Water Works* v. *City of San Francisco,* 124 id. 574; *Ozark-Bell Tel. Co.* v. *City of Springfield,*

140 id. 666; *Matter of Arkansas R. Rates,* 163 id. 141; *San Joaquin & Kings R. C. & I. Co.* v. *Stanislaus County,* Id. 567; *Contra Costa Water Co.* v. *City of Oakland,* 165 id. 518; *Spring Valley Water Co.* v. *City of San Francisco,* Id. 667; *Bonbright* v. *Geary,* 210 id. 44; *Pacific Gas & Elec. Co.* v. *City of San Francisco,* 211 id. 202; *Boyle* v. *St. Louis & S. F. R. Co.,* 222 id. 539; *Springfield G. & E. Co.* v. *Barker,* 231 id. 331; *Landon* v. *Public Utilities Commission,* 234 id. 152. But the plaintiff, if I understand its position correctly, does not appear to be content to procure relief against the statutory rate. Upon the extended oral argument its learned counsel again and again stated that he was not seeking a mere declaration that the statutory rate was confiscatory, but that he insisted upon a fixation by the court of the $1.50 rate, or such other rate as might be fixed by the court as reasonable. He stated repeatedly that any decree that fell short of fixing a rate would not answer the purpose of his client, and would furnish no relief at all, or at least none that was adequate. In taking this position he very clearly followed the burden and trend of the complaint itself, for there, in paragraph XL, it is alleged " that all the aforesaid reasons why the question of the validity of the statutory rates aforesaid be settled at once in this action apply with equal force to the question of the fairness of the one dollar and fifty cent rate intended to be collected by plaintiff; that the Public Service Commission has no power to fix plaintiff's rates; that even if it had the power it is so doubtful it could only be exercised to any good effect after a long delay and much litigation; that the present exigency is great, as plaintiff is threatened with insolvency; that the mere expense of the preparation of this case is very great, amounting to many thousands of dollars for counsel fees, and

many thousands of dollars for appraisals and valuations which plaintiff at present finds it difficult to meet. That plaintiff should not be remitted to another tribunal to repeat this litigation, or go through one substantially the same on the same facts. That the mere declaration by the court that the dollar rate is confiscatory is and will be insufficient relief for all parties interested, under the circumstances of this case, which are unusual. That therefore it is absolutely necessary for the purposes aforesaid, and for the protection of the plaintiff, as well as the public, that an injunction be forthwith granted against all interference with the plaintiff in the collection of at least one dollar and fifty cents per thousand feet for its gas." The prayer for relief seems also to have been drawn with that dominating idea in mind. If it be the case, therefore, that the plaintiff seeks primarily the fixation of a new rate, that the other relief it desires is merely incidental to and complementary of such a fixation, and that it desires no relief unless it shall procure the fixation it so urgently insists upon, I shall deny its motion *in toto*. I do not think that anything could very well be clearer than that, under the American form of government, our courts are without power to fix a rate, and statements in and the reasoning of numerous decisions confirm what appears to be so plain upon principle. *Chicago & G. T. Ry. Co.* v. *Wellman,* 143 U. S. 339, 344; *Reagan* v. *Farmers Loan & Trust Co.,* 154 id. 362, 397; *St. Louis & San Francisco Ry. Co.* v. *Gill,* 156 id. 649, 663; *Interstate Com. Commission* v. *Cincinnati, N. O. & T. P. Ry. Co.,* 167 id. 479, 499; *Minnesota Rate Cases,* 230 id. 352, 433; *Western Union Tel. Co.* v. *Myatt,* 98 Fed. Repr. 335, 343; *Spring Valley Water Works* v. *San Francisco,* 82 Cal. 286, 307. Nor can I conceive of any possible situation involving even the most exceptional hardship to a util-

ity company, that would justify a court in departing
from its proper sphere of action by arrogating to itself
what heretofore has been regarded as an exclusively
legislative right. It may be true that no court has here-
tofore had occasion directly and expressly to pass upon
an application for a fixation by it of a rate, but the
judges who wrote in the cases I have referred to did
have occasion to define the extent of judicial power in
respect of rate matters, and their expressions, *dicta*
though many or all of them may possibly be, leave not
the least room for doubt that in their view the fixation
power is wholly legislative; and plaintiff's counsel
appears to have been unable to discover a single
expression of a contrary view in any adjudicated case.
It is urged that the plaintiff's situation is unusual in
that under a recent decision (July 24, 1918) of ex-Jus-
tice Charles E. Hughes, sitting as a referee in the case
of *Brooklyn Borough Gas Co.* v. *Public Service Com-
mission,* 17 St. Dept. Rep. 81, a mere declaration
that the statutory rate is confiscatory would leave
the plaintiff without recourse to any existing gov-
ernmental agency, except a legislature not in session,
for the fixation of a reasonable rate. Counsel for
the public service commission takes a different view,
and contends that a judicial declaration that the
existing statutory rate is confiscatory would leave
the public service commissions free to fix a rate
under the powers vested in them by the Public
Service Commissions Law. I express no opinion upon
the subject, as I believe the question has no relevancy
here. The plaintiff, if its view of the matter be cor-
rect, is in no worse case than if there were no public
service commissions in existence, and surely that
absence of a very modern example of a delegated
authority to exercise legislative functions cannot be
given the effect of vesting in courts of law powers

that are not only wholly foreign to their history and purpose, but the exercise of which by courts would subvert our entire scheme of a division of government into the executive, legislative and judicial depart-ments. I am not satisfied, however, that the plaintiff is willing to stand or fall, in respect either of pre-liminary or final relief upon its demand for a judicial fixation of a reasonable rate. Had the complaint been so drawn as to allow no escape from the conclusion that such a fixation was intended to be a *sine qua non,* the denial of the motion before me would necessarily follow. So, if plaintiff's counsel shall notify me that the plaintiff will be satisfied with nothing short of the fixation of a rate, I shall deny the motion. If, how-ever, he shall notify me that his client will be satisfied with an injunction against the enforcement of the existing statutory rate, with appropriate relief inci-dental to such an injunction, I shall grant the motion to that extent, in which case I shall require a bond suffi-cient for the protection of the consumers.

Judgment accordingly.