Burke, J. (dissenting).
I must respectfully dissent from the affirmance of the order because I cannot conceive of any state of facts which could possibly sustain the constitutionality of the Local Law of the City of New York as applied to these appellants.
Plaza Management Co. (“Plaza”) purchased an apartment house at Third Avenue and 78th Street on February 1,1959 for $2,700,000. At that time, its assessed value was $1,360,000 and the rental income was $337,000. Shortly after the purchase, Plaza made an application for a 6% return .on the valuation of the property and the State Bent Administrator, in passing upon and approving the application, specifically approved the 1959 sale for use in determining the valuation base. Two 'subsequent applications were also approved and each used the 1959 sale in determining the rent base. However, when Plaza made another application .on October 5, 1967, the 1959 sale was rejected and the assessed valuation of the property, $2,150,000 was used in its stead because of a 1967 amendment to the City Rent Law (Local Law No. 41 of City of New York of 1967) which limited the City Rent Agency’s authority to consider an ■ otherwise qualifying sale to sales occurring between February 1, 1961 and the date of filing the application. Clinton Hill’s situation is similar to that of Plaza except that the reduction in the valuation base is some $2,621,166.
The issue to be resolved on this appeal is the very simple one as to whether there is any rational basis for the 1967 law. It is inescapable that the elimination of pre-1961 sales as bases for rent return determinations and the limitation to the use of assessed values as the only available criterion is arbitrary and without a rational basis. I recognize, of course, that legislation must be presumed constitutional and that courts may not substitute their judgment for that of the legislative body on the mere ground of disagreement as to the wisdom, propriety or desirability of particular legislation (Lincoln Bldg. Assoc. v. *633 Barr, 1 N Y 2d 413, 415). I am also obliged to recognize, however, that these caveats cannot serve as an excuse for rubber-stamping legislative acts which fundamentally deprive property owners of their basic constitutional right to due process and the equal protection of the laws.
The legislation involved in these companion cases indisputably reduces the appellants’ return on the value of their properties to approximately 4.7 % and the upholding of this enactment may well force a revision in popular terminology so as to refer to future proceedings as “ less-than-6%-return ” rent proceedings. This reduction is not, however; accomplished directly by legislation changing the permissible rate of return; it is accomplished by the back door method of discarding a heretofore fully acceptable valuation base, confining the property owner to an assessed value base which is lower than that prior valuation base and thereby necessarily reducing the rate of return. In he face of these facts, the city nonetheless argues that there is a rational basis for the enactment. The argument is to the effect that the legislators could reasonably determine that sales prices tend to become ‘ ‘ stale ’ ’ with the passage of time and should not, therefore, be used as a valuation base after the passage of a selected period of time. The argument is eminently reasonable, plausible and thoroughly satisfying until it is applied to the facts obtaining in the real world in which rent control exists and flourishes. There is no doubt, of course, that the 1959 sales price for Plaza’s Third Avenue property does not accurately reflect its 1969 value and it is, therefore, a “ stale ” index of value. Accordingly, it makes perfectly good sense to discard it in 1967. But, to reach the conclusion sought to be advanced by the city, the argument must stop at this point because, carried further and applied to the facts, it destroys the city’s contention as to the rationality of the cut-off provision. The 1959 sales price is ‘ ‘ stale ’ ’ precisely because it represents a substantial undervaluation of the property. Given that fact, hardly disputable in light of this court’s taking judicial notice of the substantial appreciation in the value of land abutting on Third Avenue (Matter of City of New York [James St.], 21 N Y 2d 293, 301), it is impossible to attach the adjective “ rational ” to a provision which substitutes for that undervaluation a valuation base which is still lower than the discarded valuation base ($545,000 lower for Plaza and over $2,000,000 lower for Clinton *634 Hill). The irrationality of snch a provision is compounded when it is acknowledged that the discarded sales valuation base was accepted on three prior applications and no facts have been advanced which demonstrate such a change in circumstances that the lower valuation base should be used. Indeed, the undisputed facts indicate instead that even the higher base formerly used is now a severely inadequate measure of the value of the subject property. Nonetheless, in the face of these facts, the majority affirms a determination that the enactment is constitutionally impeccable.
The citation to Bucho Holding Co. v. State Bent Comm. (11 N Y 2d 469) in the Appellate Division’s opinion acutely demonstrates exactly what “ staleness ” means. That decision indicated that there is a point below, which a rate of return becomes unreasonable and confiscatory. It held that, there being no suggestion that the return involved in that case, approximately 4%%, was so low as to be unreasonable, there was no basis upon which to invalidate the statute. But, Bucho was decided in 1962 when interest rates were approximately half what they are today and is itself “ stale ” insofar as it is sought to be used to justify a 4.7% return in 1969 when interest rates are approximately double that figure. Clearly, the fact that a rate was not so unreasonably.low as to be confiscatory in 1962 is in no way determinative of the reasonableness of that same rate under the changed circumstances of 1969. In light of existing economic conditions, the rate of return in the 4% range approved in Bucho (supra) and Teeval Co. v. McGoldrick (304 N. Y. 859 [1952]) and 1. L. F. Y. Co. v. City Rent Administration (11 N Y 2d 480 [1962]) is now so unreasonably low as to constitute a confiscation of property and those cases cannot serve to preclude the re-examination of those rates as changing circumstances require.
It is also clear that the appellants ’ contentions as to the unconstitutionality of the enactment do not in any way conflict with decisions to the effect that no property owner has such a vested interest in any rule that he is entitled to require its retention (see I. L. F. Y. Co. v. Temporary Staie Housing Rent Comm., 10 N Y 2d 263, 270). The appellants are entitled, not to the retention of a particular rule, but, rather, to a rational determination of a fair and reasonable return. In the language of former Chief Judge Casdozo, speaking in relation to a rate-setting statute (which this legislation in reality accomplishes *635 by indirection), “ [a] statute prescribing rates is one of continuing operation. It is an attempt by the legislature to predict for future years the charges that will yield a fair return. The prediction must square with the facts, or be cast aside as worthless. * * * It must square with them in one year as in another, at the beginning but equally at the end.” (Municipal Gas Co. v. Public Serv. Comm., 225 N. Y. 89, 96 [emphasis added].) Manifestly the legislation at hand is not even a color-able attempt at prediction, but merely a capricious pronouncement of a rule without a reason which sensible men can accept. Even were we to be faced with an explicit legislative declaration of findings as support for the validity of the enactment, the fact would still remain that “ a Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared.” (Chastleton Corp. v. Sinclair, 264 U. S. 543, 547 [per Holmes, J.].)
Although it is not directly involved on this appeal, the city’s real estate tax system, as it bears upon real property owners such as Plaza and 'Clinton Hill, is illustrative of the strangling inconsistencies to be found in the treatment of owners of rent-controlled properties. In 1968, the city succeeded in obtaining legislation (L. 1968, ch. 1069) permitting it to use special equalization ratios in order to increase its taxing powers while remaining within the constitutional limitations on that power. Thus, as .an example of the effect of this legislation, although Plaza’s property has a “ fair return” value of only $2,150,000, just around the corner at the Tax Department, that same property is included in the ‘ ‘ average full valuation of taxable real estate of the city” at some $2,920,000. The average full valuation is then used to set the effective tax rate in each borough and the use of the equalized valuation figure necessarily results in an increase in the real estate tax paid by the property owner. Thus, the 1967 legislation, by disallowing the use of Plaza’s 1959 sale figure, limits Plaza to a return based upon a valuation which is so low that the city, by virtue of 1968 legislation, determines its taxable base by inclusion of the same property at a far higher equalized value for the purpose and with the effect of collecting taxes from Plaza which are currently some $40,000 higher than what they were at the time of Plaza’s last “ fair return” application. Of course, Plaza must nonetheless still pay those increased taxes until it secures a “ fair return ” allow *636 anee, as well as mortgage interest and amortization from the 4.7% return which results from the use of the unequalized assessed valuation which the city finds does not return it enough in taxes. The increases in taxes cannot be recouped since the “ fair return ” allowance is not retroactive. Rationality can be imputed to this incongruity only by repealing the dictionary entry for that term.
In conclusion, I merely note that the per curiam opinion is wholly irrelevant to the central issue of the rationality of the 1967 legislation. It is as irrelevant as the holding in Bucho (11 N Y 2d 469, supra) which the City Rent Agency relies on. That holding in 1962 enshrined an almost ancient statistic, i.e., the 1954 equalization ratios as a base for fixing rents and, mirabile dictu, that anachronism is still used to determine rents outside New York City in the year 1969.
Accordingly, I would reverse the order of the Appellate Division and declare the law, as applied to these properties, unconstitutional.
Chief Judge Fuld and Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur in per curiam opinion; Judge Burke dissents and votes to reverse in a separate opinion.
In each case: Order affirmed.