THE PEOPLE OF THE STATE OF NEW YORK ex rel. IROQUOIS NATURAL GAS COMPANY, Relator, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, SECOND DISTRICT, and 'the CITY OF BUFFALO, Respondents.

Third Department, January 22, 1921.

**Gas and electricity — application by gas company for increased rate — determination of Public Service Commission annulled for failure to estimate present value of company's investment — Commission not relieved from making such estimate by stipulation of company to assume burden of proof to establish reasonableness of proposed rate — elements to be considered in determining present values.**

A determination of the Public Service Commission denying the application of a gas company for an increased rate will be annulled where the Commission has merely determined that the present rates are sufficient on

the basis of the value of the investment by the company at the time of its organization and additions to the property since that time, and there has been no effort by said Commission to estimate the present value of the company's investment.

The Commission is not relieved from the duty of determining the question on the basis of the present value of the property by a stipulation entered into by the company when it acquired the property in question by which, among other things, it agreed that in any proceeding to fix rates it would assume the burden of proof to establish affirmatively that the proposed rate was just and reasonable.

Original costs, permanent improvements, necessary operating expenses, depreciation for use, present economic conditions, together with other pertinent matters including the opinions of competent witnesses as to present values, should all receive fair consideration in reaching a conclusion as to the reasonable value of the property involved.

CERTIORARI issued out of the Supreme Court and attested on the 19th day of May, 1919, directed to the Public Service Commission of the State of New York, Second District, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings, decisions, opinions and actions had in fixing and determining the rates for gas furnished by the relator to its customers.

*Kenefick, Cooke, Mitchell & Bass* [*Daniel J. Kenefick* and *C. Pascal Franchot* of counsel], for the relator.

*William S. Rann, Corporation Counsel* [*Frederic C. Rupp* of counsel], for the respondent City of Buffalo.

COCHRANE, J.:

" What the company is entitled to demand, in order that it may have just compensation, is a fair return upon the reasonable value of the property at the time it is being used for the public." (*San Diego Land & Town Co.* v. *National City*, 174 U. S. 739, 757; *San Diego Land & Town Co.* v. *Jasper*, 189 id. 439, 442; *Willcox* v. *Consolidated Gas Co.*, 212 id. 19, 41.)

" In order to determine the rate of return upon the reasonable value of the property at the time it is being used for the public, it, of course, becomes necessary to ascertain what that

value is. * * * The value of real estate and plant is to a considerable extent matter of opinion." (*Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 41, 42.)

In *Smyth* v. *Ames* (169 U. S. 466, 546) the court, in considering the question of transportation rates, said: " We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience."

In *People ex rel. Kings County L. Co.* v. *Willcox* (210 N. Y. 479, 495) it was said: " The cost of reproduction less accrued depreciation rule seems to be the one generally employed in rate cases. But it is merely a rule of convenience and must be applied with reason." That rule is practically one method of arriving at the present value of the property.

The principles above enunciated the Commission recognized but failed to apply. The relator was organized in the year 1911 and with the approval of the Commission acquired in the following year property for which it paid more than $8,000,000. The Commission now says that the property thus acquired with its approval was actually worth only $5,451,424.50 when it was acquired. It allows for subsequent additions to the property $1,140,061.12 and for working capital $745,000, making a rate base of $7,336,485.62, on which amount it estimates that the former rate received by the relator will yield a return of eight and fourteen one-hundredths per cent and consequently denies the application of the relator for an increased rate.

There has been no effort by the Commission to estimate the present value of the relator's investment. Its reason for this failure is that when the relator took over the property in question it entered into a stipulation among other things agreeing that in any proceeding to fix rates it would assume the burden of proof to establish affirmatively that the proposed rate was just and reasonable and that the evidence offered by the relator in this proceeding was largely opinion evidence of reproduction costs unaccompanied by evidence of actual cost or investment, meaning by this last statement the actual cost to the grantors of the relator. We discover nothing in the stipulation which relieves the Commission from the duty of determining the question on the basis of the present value of the property. The Commission of course was not obliged to accept the opinions of witnesses if such opinions were regarded as unreliable, but the stipulation did not undertake to appraise the value of such evidence nor to discriminate against it nor did it change the rules or principles by which the Commission was to be guided in reaching its determination. Opinion evidence of reproduction costs was one method of proving present value. When it was introduced it created the necessity for a determination by the Commission as to such value. Its weakness or unreliability did not dispense with such necessity.

The problem of fixing rates is necessarily difficult. As pointed out different elements need to be considered. Original costs, permanent improvements, necessary operating expenses, depreciation for use, present economic conditions, as well as other pertinent matters including the opinions of competent witnesses as to present values, should all receive fair consideration in reaching a conclusion as to the reasonable value of the property involved. As stated by Mr. Justice HUGHES in the *Minnesota Rate Cases* (230 U. S. 352, 454): " It is clear that in ascertaining the present value we are not limited to the consideration of the amount of the actual investment. If that has been reckless or improvident, losses may be sustained which the community does not underwrite. As the company may not be protected in its actual investment, if the value of its property be plainly less, so the making of a just return for the use of the property involves the recognition of its fair

value if it be more than its cost." The pertinency of that statement receives forceful illustration in this case. The Commission has taken into consideration only the value of the investment in the year 1912 with certain additions thereto and not the " capital actually expended." (Pub. Serv. Comm. Law, § 72.) The Commission in this proceeding is not bound by the " capital actually expended " in 1912, although it approved such expenditure at that time, but it is quite obvious that it is as unjust to the relator to take into consideration only the actual value of the property acquired in 1912 without reference to any possible appreciation in that value at the present time as it would be unjust to the consumers of gas to regard only the " capital actually expended " in 1912 without reference to the propriety of such expenditure. There may be difficulties in the way of determining present valuations but such difficulties do not excuse the necessity for such determination. The Commission should make that determination as best it can with the material at hand. The important question in the case has not been decided and the determination reached ignores essential principles and is founded on methods which do not lead to a just result.

The question is complicated by the circumstance that the relator receives seventy-six per cent of its gas from the United Natural Gas Company, a Pennsylvania corporation, and the stock of both corporations is owned by the National Fuel Gas Company, a New Jersey corporation. The reasonableness of the agreement between the relator and the Pennsylvania corporation, therefore, may be a proper subject of inquiry especially in view of the interlocking relationship between all these affiliated corporations. In fact the stipulation aforesaid makes such inquiry pertinent. We do not, however, reach that question. Assuming that the Pennsylvania corporation is receiving an exorbitant price for its gas it nevertheless does not appear that the relator at its former rates is receiving a fair return on the present actual value of its investment. In the final analysis as pointed out the Commission has merely determined that such former rates are sufficient with reference to the value of the investment in 1912 including additions to the property since that time.

Without reference to other questions raised the determination

must be annulled, with fifty dollars costs and disbursements, and the proceeding remitted to the Commission for further consideration.

All concur.

Determination annulled, with fifty dollars costs and disbursements, and the proceeding remitted to the Commission for further consideration.