**576** People ex rel. N. Y. State Railways *v.* Pub. Serv. Comm.

Third Department, July, 1922.                    [Vol. 202

The People of the State of New York ex rel. New York State Railways, Relator, *v.* Public Service Commission, Respondent.

Third Department, July 6, 1922.

**Street railways — proceeding before Public Service Commission for increase of fare — rate base not to be determined exclusively by pre-war cost of construction less depreciation — increase in cost of construction should be considered as relevant fact — preliminary legal, administrative and engineering expenses entering into construction should be considered though originally charged to operating expenses — past profits not to be considered.**

On an application by a street railway company to the Public Service Commission for permission to increase its fare, it is improper for the Commission to determine the rate base exclusively by the cost of construction prior to 1915, or, in other words, the pre-war cost, less depreciation, and the Commission should have taken into consideration as relevant facts rising prices, changing economic features, and other elements bearing on the question as to what is a proper return under present day conditions and should have considered the evidence offered by the company of the increase during the war and after the war of the cost of construction.

The Commission should have allowed an amount, determined by it, to cover the preliminary legal, administrative and engineering expenses entering into the cost of construction, all of which expenses were itemized by the relator, though said expenses were originally charged to operating expenses, due to the fact that the road was built up gradually and the services thus rendered were furnished by the regular staff of the company.

It *seems*, that past profits earned by the company cannot be considered in fixing a rate base.

Certiorari order granted out of the Supreme Court at the Ulster Special Term and entered in the office of the clerk of the county of Albany on the 10th day of January, 1922, directed to the Public Service Commission, commanding it to certify and return to the office of the clerk of the county of Albany all and singular its proceedings had in the matter of the application of New York State Railways for an increase of fare in the city of Utica and vicinity.

The proceedings herein were commenced on December 23, 1920, by filing relator's petition with the then Public Service Commission, Second District, under subdivision 1 of section 49 of the Public Service Commissions Law (as amd. by Laws of 1911, chap. 546)* and section 181 of the Railroad Law.

---

* Since amd. by Laws of 1921, chaps. 134, 335, and Laws of 1922, chap. 153, and short title of statute changed to Public Service Commission Law by Laws of 1921, chap. 134.— [Rep.

People ex rel. N. Y. State Railways v. Pub. Serv. Comm.  577

App. Div. 576]          Third Department, July, 1922.

*Kernan & Kernan* [*Walter N. Kernan* and *Warnick J. Kernan* of counsel], for the relator.

*Ledyard P. Hale* and *B. Meredith Langstaff*, for the respondent.

COCHRANE, P. J.:

The relator operates street railroad systems in different cities of the State and contiguous territory. It applied to the Public Service Commission for permission to charge more than six cents a passenger on that portion of its lines operating in the city of Utica and surrounding villages, there being approximately sixty miles of trackage affected by this proceeding. The application was denied. The relator contends that the denial of the application amounts to confiscation.

The Commission arrived at a rate base of $2,864,000. In reference to this rate base the Commission states: " On the basis of the 1920 income the company would fall short of the amount required for an 8 per cent return on investment and adequate provision for depreciation by the sum of $196,631." After making various adjustments and deductions from this latter amount based on estimated savings in wages, materials and supplies, depending largely on correct prophecies as to the future, it finds that there will be an annual deficit of $58,721, which it leaves the relator to overcome in some undefined manner. It then states: " It must be understood that even if the company should fail to make up this deficit of $58,721 it would still be earning at the 6c fare approximately 6% on its investment and on previous deficiencies in earnings." From the foregoing synopsis of the situation it is apparent that the Commission has not extended any liberality to the relator.

In arriving at the rate base the Commission fixed the value of the road and equipment at $3,500,472, and from this deducted for depreciation $1,335,721. The former amount was substantially the actual cost to the relator prior to the year 1915 or in other words the pre-war cost. The Commission says that the city (of Utica) " has submitted evidence of the actual cost of the railway property used in rendering service in the Utica district and proved that the normal reproduction cost (pre-war) would not exceed the actual cost." The relator submitted evidence of much greater value during the war and after the war, all of which manifestly was ignored. The Commission has clearly fallen into the error pointed out by this court in *People ex rel. Iroquois Natural Gas Co.* v. *Pub. Serv. Comm.* (194 App. Div. 578). All of the evidence should be considered in its entirety. Different elements

37

**578** PEOPLE EX REL. N. Y. STATE RAILWAYS *v.* PUB. SERV. COMM.

Third Department, July, 1922. [Vol. 202

require consideration in estimating value. As stated by Mr. Justice HUGHES in the *Minnesota Rate Cases* (230 U. S. 352, 434): " The ascertainment of that value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts." The evidence introduced by the relator was relevant. It has not been considered. We do not mean to say that the value of the property should be estimated at what its reproduction at the present time would cost. Equally true is it that its cost before the war is not the exclusive criterion. The Commission cannot arbitrarily take that cost as the present value. It would seem that the present value must be something more than pre-war cost less depreciation. There should be " a proper consideration of all relevant facts." Our criticism is that all relevant facts have not been considered. The opinion of the Commission (*Matter of New York State Railways*, 26 State Dept. Rep. 381, 384) shows that it is based entirely on the testimony of the experts of the city to the effect that the actual cost of the property is " the *normal* reproduction cost (pre-war)," and such pre-war cost is taken as the present actual value in fixing the rate base. It is clear, therefore, that no consideration has been given to rising prices, changing economic features, and other elements bearing on the question as to what is a proper return under present day conditions. The incomplete method of valuation has necessarily reduced the total valuation of the relator's property so substantially as to make it uncertain whether an adequate return on such property has been allowed.

In fixing the rate base the Commission disallowed certain overhead expenses claimed by the relator to have been incurred in constructing, organizing and developing the sixty miles of trackage involved except as to the amount of $40,000 allowed for organization and development. These expenses were itemized by the relator as preliminary, legal, administration and engineering expenses. It has been customary to include in the rate base something for these expenses but the amount is largely theoretical and must be determined by the Commission with reference to the facts in each particular case. Generally speaking it is a question of fact for the Commission to determine. It is somewhat difficult to place pecuniary value on these elements. In this case the property of the relator was built up gradually and not as an entirety and the Commission states that the necessary engineering, legal and administration services in connection with the construction were furnished by the regular staff of the company whose salaries were charged to operating expenses. Undoubtedly this feature should

receive due consideration but some portion of these expenses must necessarily have been incurred by reason of the organization, construction and development of the particular road in question. With the exception above noted the Commission disallowed these items because " otherwise it would be necessary to revise the operating expense accounts by excluding a portion of the salaries of the officials concerned, and such revision would produce larger net earnings." The " larger net earnings " thus produced would relate to the period when the particular portion of the road under consideration was being organized, constructed and developed, and would in no way affect present net earnings. It has been held that past losses are not to be considered in determining the rate base and whether the present rate is confiscatory. (*Galveston Electric Co.* v. *Galveston*, 258 U. S. 388 [decided April 10, 1922]; 66 L. ed. ——; U. S. Sup. Ct. Adv. Ops. 1921–22, p. 382; *Knoxville* v. *Water Co.*, 212 U. S. 1, 14.) It would seem to follow as a necessary corollary that if past losses may not be considered in fixing a rate base neither should past profits be so considered nor what would have been past profits or " larger net earnings " by a readjustment of operating expenses. We think, therefore, the Commission has proceeded on an erroneous principle in excluding these overhead expenses. As before stated, the amount which should be allowed may be problematical and the correct amount must be fixed by the Commission, but the amount heretofore fixed is the result of the application of an erroneous principle.

The determination should be annulled, with fifty dollars costs and disbursements, and the proceeding remitted to the Commission for further consideration.

All concur.

Determination annulled, with fifty dollars costs and disbursements, and proceeding remitted to the Commission for further consideration.