MUNICIPAL GAS COMPANY OF THE CITY OF ALBANY, Appellant, *v.* PUBLIC SERVICE COMMISSION, SECOND DISTRICT, Respondent, Impleaded with Others.

Gas companies — inadequate and confiscatory rates fixed by statute — power of courts to regulate rates — aggrieved party may maintain action in equity to restrain enforcement of confiscatory rates — sufficiency of pleading.

1. The legislature enacted a statute which fixed the maximum charge for illuminating gas in the city of Albany at one dollar per thousand cubic feet (L. 1907, ch. 227).   The plaintiff in its complaint herein asserts that changed conditions have made those charges inadequate,

and that to compel adherence to the statute is to confiscate its property. It further alleges that during the year 1917 and the first six months of 1918 there was a large deficit owing to the decrease in net earnings; that the deficit is increasing and likely to increase further; that the cost of material and of labor has risen with the war, and that there is no prospect of any decrease therein; and that if these conditions continue, the deficit for 1918 and also for 1919 will be such as that the rate will be confiscatory. Judgment is demanded that the defendants be restrained from compelling the plaintiff to adhere to the statutory maximum. To that complaint the public service commission demurred, and the Appellate Division affirmed an order sustaining the demurrer and allowed an appeal to this court. *Held,* that the rates of public service corporations ought not to be so reduced by statute as to preclude a fair return, and that reduction below this is confiscation. Into every statute of this kind is to be read the implied condition that the rates shall remain in force at such times and at such only as their enforcement will not work denial of the right to a fair return. Any party aggrieved may invoke the judgment of the courts to restrain the enforcement of statutes which have become confiscatory. *Held,* further, that considered as a pleading and accepting it with all its reasonable inferences, unexplained and undenied, the allegations of the complaint make out a *prima facie* case of the denial of a just return.

2. The plaintiff sells electric current as well as gas. At the outset its charter confined it to the manufacture and sale of gas. The manufacture and sale of electric current was added at a later date by separate act, and the complaint alleges that the gas and electric operations of plaintiff have been and now are conducted as distinct and separate departments. *Held,* that under these and other acts, neither business is an incident of the other, nor has any relation to the other. Hence, the statement of a cause of action does not involve the disclosure of the earnings from sales of electricity.

3. There is by resort to this action in equity the avoidance of multiplicity of actions, the saving of waste and friction, the opportunity to analyze accounts so complex as to be unintelligible to juries, and protection against penalties and losses. The plaintiff's business is menaced and there is no adequate remedy at law, and equity, therefore, properly intervenes to save it from impairment in a single comprehensive action.

*Municipal Gas Co.* v. *Public Service Comm.,* 186 App. Div. 933, reversed.

(Argued December 9, 1918; decided January 7, 1919.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 22, 1918, which affirmed an order of Special Term granting a motion by defendant, respondent, for judgment on the pleadings.

The following question was certified: " Does the complaint in this action state facts sufficient to constitute a cause of action against the defendant Public Service Commission, Second District."

*Neile F. Towner* for appellant. Chapter 227 of the Laws of 1907 is unconstitutional against plaintiff, appellant, because confiscatory and plaintiff, appellant, can properly raise such issue at this time. (*Willcox* v. *Consolidated Gas Co.*, 212 U. S. 41; *Smyth* v. *Ames,* 169 U. S. 466; *Chicago, Milwaukee & St. Paul Railway* v. *Minnesota,* 134 U. S. 418; *Minnesota Rate Cases,* 213 U. S. 433; *People ex rel. Kings County Lighting Co.* v. *Willcox,* 210 N. Y. 479; *Covington, etc., Turnpike Co.* v. *Sanford,* 164 U. S. 578; *Des Moines Gas Co.* v. *Des Moines,* 238 U. S. 143; *Denver* v. *Denver Union Water Co.*, 246 U. S. 194.) A doctrine that a statute can only be judged as to its constitutionality by the conditions existing at the time of its enactment would be intolerable and remove practically all the safeguards to property provided by the fundamental law of the land. (*Missouri* v. *Chicago, B. & Q. R. Co.*, 241 U. S. 539; *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Smyth* v. *Ames,* 169 U. S. 466; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Northern P. R. Co.* v. *North Dakota,* 216 U. S. 579; *Louisville* v. *Cumberland Tel. & Tel. Co.*, 225 U. S. 430; *Des Moines Gas Co.* v. *Des Moines,* 238 U. S. 153; *Darnell* v. *Edwards,* 244 U. S. 70.) The test of the constitutionality of chapter 227 of the Laws of 1907, fixing the maximum rate for gas in the city of Albany, is by an action in equity, and the Supreme Court of this state

has jurisdiction. (*Missouri* v. *Chicago, Burlington & Q. R. Co.*, 241 U. S. 533; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Smyth* v. *Ames*, 169 U. S. 466; *Des Moines Gas Co.* v. *City of Des Moines*, 238 U. S. 153; *Darnell* v. *Edwards*, 244 U. S. 570; *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Detroit* v. *Detroit Citizens' S. R. Co.*, 186 U. S. 378–380; *Cleveland* v. *Cleveland City R. R. Co.*, 194 U. S. 517; *Ex parte Young*, 209 U. S. 123.)

*Ledyard P. Hale, John J. McManus* and *Wilber W. Chambers* for respondent.   Under no circumstances now in existence is the plaintiff entitled to have a court adjudicate finally that chapter 227 of the Laws of 1907, which was admittedly constitutional when it was adopted and which has admittedly remained constitutional until some time during the year 1918, has suddenly become unconstitutional by reason of the increased costs of manufacturing and distributing gas due to war conditions. (*People* v. *Budd*, 117 N. Y. 1; *Vil. of Saratoga Spgs.* v. *Saratoga G., etc., Co.*, 191 N. Y. 123; *Matter of Quinby* v. *P. S. Comm.*, 223 N. Y. 244; *Matter of International Ry. Co.* v. *Rann*, 224 N. Y. 83; *People ex rel. Mun. Gas Co.* v. *P. S. Comm.*, 224 N. Y. 156; *Van Antwerp* v. *State*, 218 N. Y. 422; *Knoxville* v. *Water Co.*, 212 U. S. 1; *Willcox* v. *Cons. Gas Co.*, 212 U. S. 19.)

*Arthur L. Andrews, Corporation Counsel* (*John J. McManus* of counsel), for City of Albany, impleaded. The complaint does not state facts sufficient to constitute a cause of action for equitable relief.   (*Matter of Rebbecchi*, 51 Misc. Rep. 403; *San Diego L. & T. Co.* v. *National City*, 174 U. S. 739; *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Willcox* v. *Cons. Gas Co.*, 212 U. S. 19.)   The complaint is fatally defective in that it fails to show or allege that the rate fixed by chapter 227 of the Laws

of 1907 has not yielded a reasonable average return upon the capital invested. (*Willcox* v. *Cons. Gas Co.*, 212 U. S. 19; *Des Moines Gas Co.* v. *Des Moines*, 238 U. S. 153; *Cedar Rapids Gas Light Co.* v. *Cedar Rapids*, 223 U. S. 655; *People ex rel. Mun. Gas Co.* v. *P. S. Comm.*, 224 N. Y. 156; *People* v. *Budd*, 117 N. Y. 1; *B. U. Gas Co.* v. *City of New York*, 50 Misc. Rep. 450.) The complaint is defective in that it fails to show or allege that its entire gas and electrical operations in the city of Albany do not yield a reasonable average return. (*Pennsylvania R. Co.* v. *Tower*, 245 U. S. 6; *Minneapolis R. Co.* v. *Minn.*, 186 U. S. 257; *St. Louis R. Co.* v. *Gill*, 156 U. S. 567; *Minnesota Rate Cases*, 230 U. S. 383.) The rate fixed by chapter 227 of the Laws of 1907 can be increased only by the legislature. (*People ex rel. Municipal Gas Co.* v. *P. S. Comm.*, 224 N. Y. 156; *People* v. *Budd*, 117 N. Y. 1, 25; *Brooklyn Union Gas Co.* v. *City of New York*, 188 N. Y. 334.)

*Merton E. Lewis, Attorney-General* (*Wilber W. Chambers* of counsel), for Attorney-General, impleaded. The complaint does not state facts sufficient to constitute a cause of action because of the absence of an allegation that the return from its entire operations, gas and electrical, fails to give it a reasonable return on its investments. (*Smyth* v. *Ames*, 169 U. S. 466.)

*William L. Ransom* and *Harry M. Chamberlain* for Public Service Commission, First District, intervening. The complaint does not make out a cause of action for injunctive relief restraining the defendant public officers from performing their duty to enforce the statute. (*Lee* v. *O'Malley*, 140 App. Div. 595; *Wallack* v. *Society*, 67 N. Y. 23; *Matter of Sawyer*, 124 U. S. 200; *Fitts* v. *McGhee*, 172 U. S. 516.) The complaint fails to allege any facts, or to make any statements whatever, showing

or tending to show that chapter 227 of the Laws of 1907 was " unconstitutional," " void " or " confiscatory " at the time it was passed or at any time within the ensuing ten or eleven years. As a valid exercise of legislative power when enacted, the 1907 statute does not and cannot become " void " and " unconstitutional," ten or eleven years later, because of changed or temporary conditions. (*Norton* v. *Shelby County*, 118 U. S. 425; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28, 47; *People* v. *Dooley*, 171 N. Y. 74; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Matter of Markland* v. *Scully*, 203 N. Y. 158; *People ex rel. Hotchkiss* v. *Smith*, 206 N. Y. 231; *People ex rel. Woodruff* v. *Britt*, 206 N. Y. 246; *Van Antwerp* v. *State of New York*, 218 N. Y. 422; Cooley on Const. Lim. [7th ed.] 259.)

*William P. Burr*, Corporation Counsel (*John P. O'Brien* and *Vincent Victory* of counsel), for City of New York, amicus curiæ.

CARDOZO, J. In April, 1907, the legislature of this state enacted a statute which fixed the maximum charge for illuminating gas in the city of Albany at $1 per thousand cubic feet (L. 1907, ch. 227). Violation of this act was to involve, for each offense, a forfeiture of $1,000 to the People of the State. For many years, the plaintiff, a corporation, has sold gas to consumers in Albany. It has not exceeded in its charges the statutory maximum. But it asserts that changed conditions have made those charges inadequate, and that to compel adherence to the statute is to confiscate its property. At first, it sought relief from the Public Service Commission. Our ruling was that the commission had no power to supersede the statutory rate, and that for confiscation, however unlawful, there must be recourse to other remedies (*People ex rel. Municipal Gas Co.* v. *Public Service*

*Commission*, 224 N. Y. 156).   This action was then begun.
The complaint, verified August 20, 1918, alleges that
during 1917 the net earnings were less than four per cent.
upon the value of the property; that during the first
six months of 1918, there was a deficit of over $31,000;
that during the last six months of 1918, the deficit will be
greater; that the cost of material and of labor has risen
with the war, and that there is no prospect of any decrease;
and that if these conditions continue, the deficit for 1918
and also for 1919 will be between $75,000 and $100,000
a year.   The defendants are the Public Service Commis-
sion for the second district, the city of Albany, the
attorney-general of the state, and the district attorney
of the county of Albany.   Judgment is demanded that
they be restrained from compelling the plaintiff to adhere
to the statutory maximum.   To that complaint, the
Public Service Commission demurred, and moved for
judgment on the pleadings.   The Supreme Court by
an order made November 2, 1918, sustained the demurrer,
and gave judgment for the defendant, with leave to the
plaintiff to amend.   The Appellate Division affirmed the
order, and allowed an appeal to this court.

(1) A challenge to our power meets us at the outset.
We are told that the wrong, if there is any, has no remedy
in the courts.   There is no denial that the rates of public
service corporations ought not to be so reduced by
statute as to preclude a fair return, and that reduction
below this is confiscation (*Smyth* v. *Ames*, 169 U. S. 466;
*Minnesota Rate Cases*, 230 U. S. 352, 434; *Missouri* v.
*Chicago, Burlington & Quincy R. R. Co.*, 241 U. S. 533;
*Rowland* v. *St. Louis & S. F. R. R. Co.*, 244 U. S. 106;
*City & County of Denver* v. *Denver Union Water Co.*, 246
U. S. 178).   But the argument is that a statute is either
valid or invalid at the moment of its making, and from that
premise the conclusion is supposed to follow that there is
a remedy for present confiscation, but none for confiscation

that results from changed conditions. We do not view so narrowly the great immunities of the Constitution, or our own power to enforce them. A statute prescribing rates is one of continuing operation. It is an attempt by the legislature to predict for future years the charges that will yield a fair return. The prediction must square with the facts, or be cast aside as worthless (*Ex parte Young*, 209 U. S. 123, 147, 148). It must square with them in one year as in another, at the beginning but equally at the end. In all such legislation, from the hour of its enactment, there thus inheres the seed of an infirmity which the future may develop. It is the infirmity that always waits upon prophecy; the coming years must tell whether the prophecy is true or false. All that we can say at the outset is that the power to regulate exists. The validity of its exercise depends upon the nicety of the adjustment between forecast and events. This is as true of a regulation which looks forward a year as of one which looks forward a decade or a century. In either case, with differences only of degree, there is a forecast of the future, which must be justified by results. Into every statute of this kind, we are to read, therefore, an implied condition. The condition is that the rates shall remain in force at such times and at such only as their enforcement will not work denial of the right to a fair return. When the return falls below that level, the regulation is suspended. When the level is again attained, the duty of obedience revives. There would be no obscurity about this if the condition were expressed. It is no less binding because it is implied. The Constitution is the supreme law; and statutes are written and enforced in submission to its commands.

We turn to the precedents, and they give strength to our conclusion. We find no support in them for the principle, now pressed on us by counsel, that confiscation, if only it is avoided to-day, may be practised with impunity

to-morrow. On the contrary, through repeated decisions, there runs the consistent thought that, in controversies of this order, experience is the final test, that the courts must bide their time, and let the workings of the law decide (*Willcox* v. *Consol. Gas Co.*, 212 U. S. 19; *City of Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Northern Pac. Ry. Co.* v. *North Dakota*, 216 U. S. 579; *Cedar Rapids Gas L. Co.* v. *City of Cedar Rapids*, 223 U. S. 655, 670; *Missouri* v. *C., B. & Q. R. R. Co.*, 241 U. S. 533, 540; *Darnell* v. *Edwards*, 244 U. S. 564, 570; *Van Dyke* v. *Geary*, 244 U. S. 39). Bills to annul rates have been dismissed " without prejudice " while the outcome remained uncertain. Bills to annul the same rates have afterwards been sustained when the vision of results was clarified by the wisdom that follows the event (*Nor. Pac. Ry. Co.* v. *North Dakota*, 236 U. S. 585; *Missouri* v. *C., B. & Q. R. R. Co.*, *supra*, at p. 540). But even at such times, the courts have not forgotten the possibilities of the future. There has been no irrevocable annulment. Leave has been reserved to the appropriate representatives of the state to move to reinstate the suspended rates whenever changing circumstances may permit an adequate return (*Minnesota Rate Cases*, 230 U. S. 352, 473; *Missouri Rate Cases*, 230 U. S. 474, 508; *Missouri* v. *C., B. & Q. R. R. Co.*, *supra*). Nowhere is there the thought or the suggestion of the thought that the controversy ceases to be justiciable when confiscation is postponed. It is true, as counsel for the respondents urge, that the plaintiff has in such circumstances " the historic right " of petition to the legislature for relief against oppression. But that is not its only right (*Village of Saratoga Springs* v. *Saratoga Gas, E. L. & P. Co.*, 191 N. Y. 123, 150). It has the right, now also grown historic, to invoke, when constitutional immunities are threatened, the judgment of the courts.

(2) The questions remain whether confiscation is a permissible inference from the allegations of the complaint.

7

For more than nine years the statutory rate was adequate. Abnormal conditions brought about a change, and now, when the return is figured upon the value of the property, the outcome is said to be a deficit. The defendants argue that courts must pay some heed to the average results; that the prosperity of one year may atone for the adversity of another; and that confiscation does not ensue unless there has been an unreasonable extension of the period of dearth. That dearth does not signify confiscation unless unreasonably prolonged, may be assumed to be true (*Darnell* v. *Edwards*, 244 U. S. 564). The difficult thing is to determine where the line is to be drawn. Its location will vary with the nature of the business, the exigencies of the present, the chances of the future. There is no other test than the rule of reason and fairness (*Cedar Rapids Gas L. Co.* v. *City of Cedar Rapids*, 223 U. S. 655, 669). One cannot crowd the governing principle into any formula more definite. It will seldom be important that rates have been inadequate for a day or a week or a month. Fleeting losses may be suffered, and yet the balance sheet may show a profit. Prolong the loss, however, for a year, and you may reach and cross the danger line. It is by the average of the year that business commonly reckons its losses and its gains. On the other hand, there may be times when the average must be distributed over periods still longer.

We make no attempt to solve these problems now. We cannot solve them fairly till all the evidence is in. Then only can the changes and chances of the business be probed and measured. This case is here upon demurrer. The only question to be determined is the adequacy of a pleading. Considered as a pleading, and accepting it with all its reasonable inferences, we think it is sufficient. There was no need to go back of 1917, and disclose the earnings of earlier years. Their significance, if they have any, is solely as evidence; they have no place in a

complaint.  We must presume, indeed, until the contrary is shown, that they were only reasonable in amount, for unfair and unreasonable rates are prohibited by statute (Public Service Commissions Law, secs. 65, 72; Consol. Laws, chap. 48).  The plaintiff has the benefit of the presumption that it has kept within the law.  The year 1917, therefore, is our point of departure.  We have allegations that for that year the return has been unfair. We have allegations of a deficit for the first half of 1918, and of a prospective deficit of greater size for the second half of that year, and for the entire year to follow.  We have allegations that the bounds of moderation have been passed, that confiscation has resulted and will indefinitely continue.  Unexplained and undenied, these allegations make out a *prima facie* case of the denial of a just return. It may, of course, be impossible to prove them.  The deficit, when analyzed, may be dissolved.  The prophecies of evil may be the vain forebodings of timidity.  The conditions engendered by the war may linger for months or years, or may vanish with the coming peace.  Those questions are for the trial.

(3) The claim of confiscation is assailed along other lines.  The argument is made that the plaintiff sells electric current as well as gas, and that the return from both branches of its business should appear in the complaint.  At the outset, its charter confined it to the manufacture and sale of gas.  The manufacture and sale of electric current was added in 1893.  The complaint alleges that " the gas and electric operations of plaintiff have been and are now conducted as distinct and separate departments."

We think the statement of a cause of action does not involve the disclosure of the earnings from sales of electricity.  That is not the business which this statute seeks to regulate.  The act of 1907 (L. 1907, chap. 227) is limited to sales of gas.  It makes no attempt to deal

with sales of electricity.    That a company which sells gas
may sometimes sell electricity is one of the accidents of
commerce.    The fortuitous conjunction of two unrelated
functions or activities does not change the rate of profit
to be derived from the fulfillment or pursuit of either.
The defendants would have us say that the plaintiff,
if it makes enough from electricity, must supply its gas
for nothing.    The legislature had not the purpose, if we
assume that it had the power, to bring that result to pass.
But the conclusion becomes the surer when we recall that
there is another statute limiting the charge for electricity.
The plaintiff must make no charge for electricity that is
not reasonable and just (Public Service Commissions
Law, sec. 65), and if it violates the prohibition, the Public
Service Commission will hold it to its duty (sec. 72).
But a reasonable price for electricity does not mean a
price that will make amends for unprofitable sales of gas.
The legislature did not intend that a burden should be
lifted from consumers of one commodity in order that it
might be cast upon consumers of the other (*Minnesota
Rate Cases*, 230 U. S. 352, 421, 435).    In fixing the
price of electricity, the plaintiff is not entitled to recoup
its losses upon sales of gas.    For the same reason, in
fixing the price of gas, it is not required to make allowance
for the just and reasonable profit which is the limit of
permissible return upon its sales of electricity.    The
distinction is often a close one between separate lines of
business, which, though run by one person, must severally
earn rewards (*Minn. Rate Cases, supra; Northern Pac.
R. Co.* v. *North Dakota*, 236 U. S. 585, 595; *Norfolk &
W. R. Co.* v. *Conley*, 236 U. S. 605), and separate incidents
or services of one composite business, which distributively
may be unprofitable, if they are profitable collectively
(*Penn. R. R. Co.* v. *Towers*, 245 U. S. 6; *People ex rel.
N. Y. & Queens Gas Co.* v. *McCall*, 245 U. S. 345, 350;
*Puget Sound Traction, L. & P. Co.* v. *Reynolds*, 244 U. S.

574, 580, 581). It is sometimes said that even then, discrimination must not be arbitrary, but must have some basis in the social welfare (*Penn. R. R. Co.* v. *Towers, supra; Nor. Pac. R. Co.* v. *Nor. Dakota, supra; Interstate Cons. St. Ry. Co.* v. *Mass.*, 207 U. S. 79, 86, 87). We need not go into such refinements now. In this instance, the legislature itself has drawn the distinction, and fixed the unit to be regulated. It has regulated the gas business as something separate and apart. It might have established a relation between the sale of gas and electricity. It has not chosen to do so. Neither business is an incident of the other. Neither has any relation to the other. Each bears its own burdens, and enjoys its own privileges.

(4) The final question is whether the remedy at law is exclusive of one in equity. The plaintiff has 26,000 customers in the city of Albany. Their rights cannot be adjudicated at law without endless litigation. They will not yield, unless under compulsion, to the demand for higher rates. If the plaintiff sues and wins, there will be delay and loss. If it sues and loses, even legal rates may be withheld (Public Service Commissions Law, sec. 75). Crushing also may be the penalties that will in that event be forfeited to the People of the state (L. 1907, chap. 227). Finally, there are complicated accounts to be unraveled, receipts and disbursements to be classified and distributed, the properties and transactions of a great business to be appraised and dissected. The defendants are public officers charged with special duties in the enforcement of the statute (*Ex parte Young*, 209 U. S. 123, 156). They assert a purpose to enforce it. With them may appropriately be joined representatives of the class of consumers, who will be bound by the decree (Code Civil Proced. sec. 448). In a single comprehensive action, the plaintiff seeks a judgment which will end the controversy forever.

We think the suit is well conceived. With notable consistency, it has been held, whenever like controversies have arisen, that equity will act (*Consol. Gas Co.* v. *City of N. Y.*, 157 Fed. Rep. 849, 881; *Willcox* v. *Consol. Gas Co.*, 212 U. S. 19; *Smyth* v. *Ames*, 169 U. S. 466, 517, 518; *Raymond* v. *Chicago U. Traction Co.*, 207 U. S. 20, 39, 40; *Ex parte Young*, 209 U. S. 123, 163, 164; *Minn. Rate Cases*, 230 U. S. 352; *Missouri Rate Cases*, 230 U. S. 474; *Missouri* v. *C., B. & Q. R. Co.*, 241 U. S. 533, 538). Many of the most distinctive features of equity jurisdiction are present (*Board of Supervisors Sar. Co.* v. *Deyoe*, 77 N. Y. 219, 226; *Nat. Park Bank* v. *Goddard*, 131 N. Y. 494, 502; *Emp. Eng. Corp.* v. *Mack*, 217 N. Y. 85, 94). There is the avoidance of multiplicity of actions. There is the saving of waste and friction. There is the opportunity to analyze accounts so complex and vast as to be unintelligible to juries (*Ex parte Young, supra*, at pp. 163, 164). There is protection against penalties that crush and against losses that cripple. Stress has been laid at times upon one element and at other times upon another. But resistance has yielded to their collective force.

We reach the same conclusion. Undoubtedly, the plaintiff has some remedy at law. The decisive point is that it is not as complete or efficient as the remedy in equity (*Walla Walla City* v. *Walla Walla Water Co.*, 172 U. S. 1, 12). Nothing to the contrary of our present holding was held in such cases as *Davis* v. *American Society P. C. A.* (75 N. Y. 362); *Delaney* v. *Flood* (183 N. Y. 323), and *Lee* v. *O'Malley* (140 App. Div. 595). In none of them was there present the risk of irreparable loss or of multiplicity of actions. This is no attempt by equity to restrain the enforcement of the criminal law; even if we were to assume that such an objection would invariably be fatal (*Ex parte Young*, at p. 162). The very purpose of the suit is a declaration of the plaintiff's rights which will enable it to shape its conduct in conformity to law.

It is another answer, though a narrower one, that the penalties are civil (*Consol. Gas Co.* v. *City of N. Y., supra; Ten. House Dept. N. Y.* v. *McDevitt*, 215 N. Y. 160, 168; Code Civil Proced. sec. 1962). The situation may be summed up in a sentence: The plaintiff's business is menaced along converging avenues of attack. Equity intervenes to save it from impairment, if not destruction.

There is, then, a remedy by injunction. But in thus holding, we do not suggest that an injunction issues as of course. It remains a discretionary remedy. The court may mould the decree in furtherance of justice. If it grants an injunction, it may limit the term of restraint. It may say that the injunction shall expire in a year or in six months or at any other stated time unless at or before such time the plaintiff shall satisfy the court that the rate is still inadequate. This will avoid the danger that the delays of litigation may continue the restraint of an injunction after the evil shall have vanished. But whatever the term of restraint, the privilege must at all times be reserved to the defendants to reinstate the suspended rates upon proof of changed conditions.

Our conclusion, therefore, is that a cause of action has been stated, and that the case must go to trial to be determined upon the merits.

In so ruling, we deal solely with the regulation of rates by statute. The decision has no bearing upon rates established by agreement as a condition of a franchise.

The order of the Appellate Division and that of the Special Term should be reversed, with costs in all courts; the demurrer overruled, with leave to answer on payment of costs within twenty days; and the question certified answered in the affirmative.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK, POUND and ANDREWS, JJ., concur.

Order reversed, etc.