In the Matter of the Application of NIAGARA, LOCKPORT AND ONTARIO POWER COMPANY, Petitioner, for a Certiorari Order Directed to WILLIAM A. PRENDERGAST, Commissioner of the Public Service Commission of the State of New York (State Division, Department of Public Service) and Chairman Thereof, and Others, as Commissioners of the said Public Service Commission, Respondents.

THE CITY OF JAMESTOWN, Intervening Respondent.

Third Department, March 27, 1930.

*Jackson, Herrick, Durkin & Leet* [*Warren Tubbs* and *Robert H. Jackson* of counsel], for the petitioner.

*Charles G. Blakeslee, Counsel Public Service Commission,* for the respondent Public Service Commission.

*J. Russell Rogerson,* of counsel, for the respondent City of Jamestown.

HILL, J.   The Public Service Commission has decided that it is not empowered to investigate and determine whether the municipally owned plant of the city of Jamestown is furnishing electrical energy at a price less than fixed by the Charter of the City.   The petitioner, a privately owned corporation, in 1887 received a franchise and constructed a plant for the generation, transmission and distribution of electricity in the city.   The city began its venture in commercial lighting in 1895.   In August, 1928, it had over 9,900 private consumers, and the petitioner had about 4,400.   At that time the city filed with the Commission a new schedule of rates, wherein a ten per cent reduction was proposed.   (Pub. Serv. Comm. Law, § 66, subd. 12, as amd. by Laws of 1921, chap. 134.)   The City Charter▪ contains the following provision: " It [the board of public utilities of the city] shall establish a scale of rents, rates or charges to be not less than cost at place of delivery for the use and consumption of water, electricity, and other public utility services, to be paid, at such times as board may prescribe, by the consumers thereof, and may, from time to time, either modify, increase, or diminish such rents, rates or charges not, however, below cost."

The petitioner, within sixty days, filed a complaint (Pub. Serv. Comm. Law, § 66, subd. 12) charging that in fixing the rates, many items of expense are paid from the general tax levy contributed by the taxpayers of this city of about 60,000 inhabitants, including the petitioner, and that nothing is paid to the city for the use of the

plant; that this permits a rate which cannot be met by the petitioner without great financial loss.

A municipality has no inherent rate-making power. It " is simply a political subdivision of the State and exists by virtue of legislative enactments. Rate regulation is a matter of the police power of the State * * *." (*People ex rel. Village of South Glens Falls* v. *Public Service Commission*, 225 N. Y. 216, 223.) The respondent argues that the Legislature has created two rate-making bodies for Jamestown. One, the board of public utilities of the city, to control the municipal sales, with its determination subject to no review except through an action for waste by a taxpayer; the other, the Public Service Commission of the State, to have power and authority concerning petitioner's sales only. The rate-making power is a legislative function, and necessarily involves legislative discretion. It is a judicial function to determine the legislative intent. In determining the intent, consideration should be given to the objects sought by the Legislature.

" A thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." (*Riggs* v. *Palmer*, 115 N. Y. 506, 509.)

When the Legislature enacted the Public Service Commission Law " it provided for a regulation and control which were intended to prevent, on the one hand, the evils of an unrestricted right of competition and, on the other hand, the abuses of monopoly." (*People ex rel. New York Edison Co.* v. *Willcox*, 207 N. Y. 86, 94.) These aims required the establishment of a uniform quality of service, fair and just charges and rates, with no discrimination or preference against or among the consumers, and the creation of a disinterested, detached and quasi-judicial forum in which the conflicting claims of competing companies or injured consumers might be equitably determined. With these aims to be attained, the Legislature could not have intended to create dual control of the same commodity in one city.

The Charter of the City provides that the municipal plant may not sell electricity at a price less than cost at the place of delivery, and permits a board of city officials to determine the price to be fixed in the first instance. This is not in conflict with article 4 of the Public Service Commission Law, and does not deprive the Public Service Commission of the power conferred by that statute.

Subdivision 5 of section 66 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134) provides:

" § 66. General powers of Commission in respect to gas and electricity. The Commission shall: * * * 5. Examine all persons, corporations and municipalities under its supervision and keep

informed as to the methods, practices, regulations and property employed by them in the transaction of their business. Whenever the Commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates, charges or classifications or the acts or regulations of any such person, corporation or municipality are unjust, unreasonable, unjustly discriminatory or unduly preferential or in anywise in violation of any provision of law, the Commission shall determine and prescribe in the manner provided by and subject to the provisions of section seventy-two of this chapter the just and reasonable rates, charges and classifications thereafter to be in force for the service to be furnished  *  *  *.''

The right to regulate public utility rates is a power vested in the State. It may be delegated to the municipality, but such an intent must clearly appear. " Every doubt must be resolved in favor of the continuance of the power in the State." (*People ex rel. Village of South Glens Falls* v. *Public Service Commission, supra,* p. 225.)

Whenever a rate has been fixed by the board of public utilities, it has been filed with the Commission in compliance with subdivision 12 of section 66, which in part provides: " Whenever there shall be filed with the Commission by any gas corporation, electrical corporation *or municipality,* as defined in this chapter, any schedule stating a new rate or charge, or any change in any form of contract or agreement or any rule or regulation relating to any rate, charge or service, or in any general privilege or facility, the Commission shall have and it is hereby given authority, at any time within sixty days from the date when such schedule would or has become effective, either upon complaint or upon its own initiative without complaint at once, and, if it so orders, without answer or other formal pleading by the interested corporation, but upon reasonable notice, to enter upon a hearing concerning the propriety of such rate,  *  *  *.''

The intention of the Legislature to delegate to the Commission the same powers concerning municipally owned as privately owned electric plants, is indicated by the language above quoted, and by like phraseology used frequently in the statute. Privately owned companies are required to file annual reports with the Commission showing in detail receipts, disbursements and indebtedness, and a description of the plant, together with other facts. (Pub. Serv. Comm. Law, § 66, subd. 6.) Municipalities engaged in a like business are required to report to the Commission, giving in detail " the location of its plant and system with a full description of the property," the receipts and disbursements, salaries and indebtedness, together with other facts regarded as necessary to permit the

Commission to exercise supervisory control. (Pub. Serv. Comm. Law, § 66, subd. 7.)

In dismissing petitioner's protest and complaint, the Commission cited *People ex rel. New York, New Haven & Hartford R. R. Co. v. Willcox* (200 N. Y. 423) as deciding that it had no power to enforce a provision of the City Charter, its jurisdiction being limited to violations of the Public Service Commission Law. The decision also stated, in effect, that it had no power to raise rates because section 72 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134) authorized the fixing of maximum rates only.

It was determined in *People ex rel. New York, New Haven & Hartford R. R. Co. v. Willcox (supra)* that the Commission had no jurisdiction to entertain a complaint or make an order concerning a nuisance which existed in violation of the Sanitary Code of the City of New York, and which affected the health and comfort of a locality within that city. The opinion states (p. 429): " There was created an elaborate system, or Sanitary Code, which directed the enforcement of all laws applicable ' to the care, promotion, or protection of health; ' vested in the board of health power to exercise all authority necessary to that end and to enforce ' all laws relating to cleanliness; ' prescribed punishment for any violation of the Sanitary Code, as for a misdemeanor; empowered the board of health to abate nuisances * * *." The Public Service Commission was not created to enforce laws concerning public health, sanitation and cleanliness. That important duty is reposed in other and different boards, composed of a personnel especially trained and qualified for that work. The law here charged to be violated had to do with the rates charged for public utility services and the rights of competitors. When the rates of a public utility corporation are involved and " there are complicated accounts to be unraveled, receipts and disbursements to be classified and distributed, the properties and transactions of a great business to be appraised and dissected," the Public Service Commission is a proper and necessary party. (*Municipal Gas Co. v. Public Service Commission*, 225 N. Y. 89, 101.) The Commission has power to investigate and ascertain if a public utility is wholly complying with its statutory obligations (*People ex rel. Karl v. United Traction Co.*, 145 App. Div. 645, 650) and to enforce the ordinances of a municipality relating to fares, rates and charges (*Willcox v. Richmond L. & R. R. Co.*, 142 App. Div. 44; affd., 202 N. Y. 515), and to employ all the general powers relating to mandates and process given it by the statute. (*Murphy v. N. Y. C. R. R. Co.*, 225 N. Y. 548.)

The authority delegated to the Public Service Commission by

the Legislature in relation to the sale of electricity is contained in article 4 of the Public Service Commission Law. Sections 66 and 72 have to do with the powers of the Commission to examine and investigate the methods and property of those so engaged, and to conduct hearings and fix rates and charges and to prescribe acts and regulations to be done and performed by those engaged in this business, and to prevent violation of any provision of law. No good purpose will be served in an original discussion of the meaning of that portion of section 72 which provides that " the price fixed by the Commission under this section or under subdivision five of section sixty-six shall be the maximum price to be charged by such person, corporation or municipality for gas or electricity * * *." That ground has been thoroughly covered and finally determined by the Court of Appeals in construing section 49 of the same act. (*People ex rel. U. & D. R. R. Co.* v. *Public Service Commission*, 171 App. Div. 607; affd., 218 N. Y. 643.) The last-mentioned section gives the Public Service Commission authority to fix rates for railroads, while sections 66 and 72 give like power as to those who sell electricity. The difference between the railroad statute and the one in reference to electricity is largely of terminology, except that section 49 codifies certain of the principles of the common law as to the right of the railroad company to have a return upon its property used in the public service. The section dealing with railroad fares and those dealing with electric sales were amended in 1921. The intent of the Legislature in making the amendment becomes obvious upon reading the opinion in *Matter of Quinby* v. *Public Service Comm.* (223 N. Y. 244). Since the 1921 amendment the Public Service Commission is authorized to deal with the regulation of rates, fares and charges " without limitation or restraint, and with the power to increase as well as decrease such rates " (*Matter of Quinby* v. *Public Service Comm., supra*, p. 258), subject only to the statutory limitation (Pub. Serv. Comm. Law, § 66, subd. 5) that the rates fixed shall be just and reasonable, and not unjustly discriminatory or unduly preferential or in anywise in violation of any provision of law.

" Reduction in the rate by the Legislature so as to be reasonable to the consumer and profitable to the corporation would seem to be well within the police power of the Legislature. Reduction in rates seems to be generally recognized as a public benefit, and yet an increase may be equally so." (*People ex rel. Village of South Glens Falls* v. *Public Service Commission, supra*, p. 222.)

The Commission here may either raise or lower the rates in accordance with the general legislative authority, fixing the maxi-

mum price to be charged (Pub. Serv. Comm. Law, § 72), and it may determine the cost of the electricity at place of delivery (Jamestown City Charter) and direct that no sales be made at a less figure. It has authority to enforce its decision. (Pub. Serv. Comm. Law, §§ 58 and 74.)

The city urges an additional ground in support of the decision, that the petitioner, a competitor, has no standing to complain because it is not aggrieved. The Commission is required to act upon the complaint of one aggrieved. A public service corporation, injured by the illegal acts of a competitor, is aggrieved and may, if no legal remedy exists, resort to equity for relief. (*Brooklyn City R. Co.* v. *Whalen,* 191 App. Div. 737; affd., 229 N. Y. 570.)

While we do not purport to list all the items which the Commission should consider in ascertaining cost, yet the following discussion seems to be required. The rules laid down as to a return upon capital invested in privately owned plants do not apply. Compensation and profit are paid to the private investor who embarks his capital in a utility venture. He is entitled to a fair return upon the reasonable value of the property used. (*Smyth* v. *Ames,* 169 U. S. 466; *Minnesota Rate Cases,* 230 id. 352, 434.) The Charter of the City of Jamestown does not require that a price be fixed which will return a profit. Gain upon the capital invested is profit. (32 Cyc. 588.) If the plant has been paid for from the profits of its operation, no return upon its value is required. If general city funds have been used in the construction of the plant, the city should receive a return thereon at least at the rate it would have paid on a loan of like amount. This would apply to the general city funds used directly in the construction, also to such, if any, as have been used for operating expenses in the past. It is claimed that officials and laborers paid from general city funds have worked a part of the time in connection with the lighting operation. This would amount to a contribution from city funds. Likewise, there should be included the operating expenses for labor and material, and a surplus should be accumulated against depreciation arising through use, age and obsolescence, also good business methods would suggest for new equipment. The property of a municipal corporation within its boundaries held for the public use is exempt from taxation. (Tax Law, § 4, subd. 3.) The real estate and facilities owned by a municipal corporation and used to supply water for strictly public uses and also for sale to private consumers, has been determined to be held for the public use and to be exempt from taxation. (*Matter of Village of Delhi,* 201 N. Y. 408.)

The determination should be annulled, with fifty dollars costs and disbursements, and the matter remitted to the Commission.

VAN KIRK, P. J., HINMAN and HASBROUCK, JJ., concur; DAVIS, J., concurs in result.

Determination annulled, with fifty dollars costs and disbursements, and the matter remitted to the Commission to proceed in accordance with opinion.