In the Matter of the Application of THE VILLAGE OF BOONVILLE, NEW YORK, Petitioner, for a Certiorari Order against MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, and the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondents.

MUNICIPAL ELECTRIC UTILITIES ASSOCIATION, Intervenor.

Third Department, November 13, 1935.

*Andrews, Andrews & McBride* [*Paul Shipman Andrews* of counsel], for the petitioner and for the intervenor.

*Charles G. Blakeslee, Counsel to Public Service Commission* [*Sherman C. Ward* of counsel], for the respondents.

*Newman & Newman* [*Claude L. Newman* of counsel], for the Village of Arcade, *amicus curiæ*.

*Albert J. Foley, City Attorney*, for the Board of Water Commissioners of the City of Dunkirk, *amicus curiæ.*

*William A. Miner, Village Attorney*, for the Village of Endicott, *amicus curiæ.*

*Samuel M. Levy, Village Attorney*, for the Village of Freeport, *amicus curiæ.*

*William L. Burke, Village Attorney*, for the Village of Hamilton, *amicus curiæ.*

*Krieger & Prey, Village Attorneys*, for the Village of Little Valley, *amicus curiæ.*

*Francis G. Hooley, Village Attorney*, for the Village of Rockville Centre, *amicus curiæ.*

*O'Connell Brothers, Village Attorneys [B. Loyal O'Connell* of counsel], for the Village of Rouses Point, *amicus curiæ.*

*Snyder, Cristman & Snyder, Village Attorneys*, for the Village of Herkimer, *amicus curiæ.*

*Asher S. Cohen, Village Attorney*, for the Village of Solvay, *amicus curiæ.*

*Rexford R. Chatterton, Village Attorney*, for the Village of Groton and for the Board of Light Commission thereof, *amicus curiæ.*

*Paul B. Hanks, Village Attorney*, for the Village of Spencerport, *amicus curiæ.*

*Busch & Garvey, Village Attorneys*, for the Village of Springville, *amicus curiæ.*

*Ralph Hastings, Village Attorney*, for the Village of Tupper Lake, *amicus curiæ.*

*William Duke, Jr., Village Attorney*, for the Village of Wellsville, *amicus curiæ.*

*Edward C. Miller, Village Attorney*, for the Village of Skaneateles, *amicus curiæ.*

BLISS, J. " Must the Public Service Commission in fixing just and reasonable rates for a municipal lighting plant fix rates high enough not only to yield a revenue sufficient to pay all operating expenses, including necessary depreciation charges, but in addition a return on the value of the property owned by the village and used in providing the electric service?" Thus the learned counsel for the respondents correctly states the question here involved.

The issue arises out of two complaints made to the Public Service Commission that the rates charged by the village of Boonville for electric service are exorbitant. One complaint was filed by consumers within the village and the other by consumers without the village.

The village of Boonville entered into the business of supplying electricity to its inhabitants in 1901 when it issued and sold $45,000 of village bonds and used the proceeds in the construction of a hydro-electric plant. Since that time the bonds have all been paid by the village and the plant expanded until it now serves not only the inhabitants of the village but also a number of outside communities. The original bond issue has been retired out of earnings from the plant and all extensions and improvements have been paid for from operating revenues. The 1934 balance sheet shows a surplus of $249,301 and a fixed capital account of $220,088. In each of the last two fiscal years $5,000 has been transferred from the electric department of the village to the general fund and used for the purpose of reducing taxes. In addition the plant has provided free street lighting service and other free municipal service to the village for the past five years.

After the filing of the two complaints the proceedings were consolidated and hearings were held by the Commission. Two opinions have been rendered by the Commission, one of an interlocutory nature setting forth the views of the Commission with relation to the principles governing the rates to be charged by a municipally owned and operated lighting plant and the other finally fixing the rates in accordance with those principles. A final order was also made fixing such rates. This order is now being reviewed by certiorari. During the hearings the village offered and the Commission excluded evidence as to the cost of reproduction new, less depreciation, of the plant, evidence as to going concern value and evidence as to the present fair and reasonable value. The village also offered evidence as to the original cost of the property. The Commission received this latter evidence not for the purpose of determining the value of the property but solely for the purpose of allocating costs between the village and the territory served outside the village. These proffers of evidence were excluded by the Commission upon the theory that as to a municipal plant reproduction cost should have no part in determining the rate to be charged; that municipal rates should be based upon the actual cost of the operation of the plant and no allowance should be made as a return upon the value of the property used. The Commission held that the primary purpose for which municipalities are organized is to furnish service,

which includes electricity, to the public as economically, efficiently and satisfactorily as possible and to make these modern conveniences and necessities available to its residents at as low a rate as it reasonably can. It said that the profit motive should not enter into the consideration because it believed that it was against sound public policy to accumulate profits from the operation of municipal plants over and above suitable reserves so that such profits might be transferred to the village funds and used to pay taxes or to promote other municipal projects. It cited a veto message by the present Governor in support of this holding. The Commission also held that the making of rates for municipalities should not be " encumbered with all the proof as to reproduction cost and the many imaginary and conjectural elements that have been presented to regulatory bodies making rates for private companies; " and that it desired to avoid the use of the " paraphernalia of reproduction cost " in the making of rates and to simplify the whole process.

It was contended by the village that it had the same right to charge rates which would yield the same rate of return as privately owned and operated public utilities. With this view the Commission disagreed, holding that when all municipal securities had been amortized and extensions built from consumer contributions, either directly or in rates, the consumers should be relieved from all further payments for the property which they themselves had created. It is frankly conceded by the respondents that if the appellant here were a privately owned utility it would be entitled to such rates as would produce, in addition to all operating expenses, a fair return upon the present value of its property. Thus the issues are crystalized.

The State has authorized villages to establish a system for supplying the village and its inhabitants with electricity (Village Law, art. 10, §§ 240–247) and to establish a scale of rents for the use of lights (Village Law, § 246). It has also by statute empowered the Public Service Commission to determine the rates which may be charged by both privately owned and operated and municipally owned and operated utilities. Pertinent portions of the statutes are as follows:

Public Service Law (Art. 4, § 66, subd. 5): " Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates, charges or classifications or the acts or regulations of any such person, corporation or municipality are unjust, unreasonable, unjustly discriminatory or unduly preferential or in anywise in violation of any provision of law, the commission shall determine and prescribe in the manner pro-

vided by and subject to the provisions of section seventy-two of this chapter the just and reasonable rates, charges and classifications thereafter to be in force for the service to be furnished."

Public Service Law (Art. 4, § 72): " After a hearing and after such an investigation as shall have been made by the commission or its officers, agents, examiners or inspectors, the commission may, by order, fix just and reasonable prices, rates and charges for gas or electricity to be charged by such corporation or person, for the service to be furnished * * *. In determining the price to be charged for gas or electricity the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question although not set forth in the complaint and not within the allegations contained therein, with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies."

General Municipal Law (§ 364): " Provisions of public service law applicable. Except that a municipal corporation need not apply to or obtain from the public service commission a certificate of authority for a public utility service under this article, all of the provisions of article four of the public service law, so far as the same are applicable, shall apply to a municipal corporation furnishing a public utility service under this article."

It is now well established that the State, under the police power, may regulate public utility rates to be charged by both private and municipal utilities. Here it has done so by setting up the same rule for each of them, viz., a reasonable rate, having due regard to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies. No distinction as to ownership or operation is made in the statute between the two classes of public utilities. The rates of each are governed by the same rule and the Public Service Commission is directed to apply this same rule to each. We find no latitude given to the Public Service Commission to apply a different rule to the municipal public utility than it does to one privately owned. We find no authority given to the Commission to establish a public policy in this respect. " The Commission can exercise only such powers as have been specially conferred by statute, together with those incidental powers which may be requisite to effectually carry out those actually granted." (*People ex rel. Municipal Gas Co. v. P. S. Comm.*, 224 N. Y. 156.)

The village, in owning and operating this public utility, is acting in a business or proprietary capacity and not as a sovereign (5 McQuillin Mun. Corp. [2d ed.] § 1946; *Canavan v. City of Mechanic-*

*ville*, 229 N. Y. 473; *City of Logansport* v. *Public Service Comm.*, 202 Ind. 523; 177 N. E. 249; *N. Y. & Queens El. L. & P. Co.* v. *City of New York*, 221 App. Div. 544; *Oakes Mfg. Co.* v. *City of New York*, 206 N. Y. 221), and may, in the absence of a statutory restriction, charge a rate which will yield a fair profit and need not furnish such service at cost. (5 McQuillin Mun. Corp. [2d ed.] § 1948; *Wagner* v. *Rock Island*, 146 Ill. 139; 34 N. E. 545; *City of Logansport* v. *Public Service Comm.*, 202 Ind. 623; 177 N. E. 249; *Shirk* v. *City of Lancaster*, 313 Penn. St. 158; 169 Atl. 557; *Preston* v. *Water Commissioners*, 117 Mich. 589; 76 N. W. 92.) Whether the State may establish a different rule for a municipality than for a utility which is privately owned is not in question here. The State has not attempted to do so. The Commission's effort in this direction is impotent because there is no legal basis to sustain it. The court must not be interested in the question as to what should be the policy of the State in this regard. Such a discussion is quite proper in a message of the Governor but not here. Suffice it to say that the Commission has exceeded its delegated powers and cannot be sustained.

Nor need we here decide whether the village may seek shelter under the protection of the due process clauses of the State and Federal Constitutions. What has been done by the Commission was without authority of law and the State has attempted nothing in violation of these constitutional limitations.

A reasonable return on capital expended includes a fair return upon the present value of the property used and useful in the public service. (*Smyth* v. *Ames*, 169 U. S. 466.) " ' What the company is entitled to demand, in order that it may have just compensation, is a fair return upon the reasonable value of the property at the time it is being used for the public.' " (*People ex rel. Iroquois Natural Gas Co.* v. *Public Service Comm.*, 194 App. Div. 578.) The exclusion or limitation of evidence as to reproduction cost new less depreciation, going concern value, original cost, depreciation, and present value was error. (*Los Angeles Gas Corp.* v. *R. R. Comm.*, 289 U. S. 287.) Also we must presume that the rates charged by the village in previous years were only reasonable in amount, for unfair and unreasonable rates are prohibited by statute. (*Municipal Gas Co.* v. *Public Service Comm.*, 225 N. Y. 89.) The Commission might not distinguish between invested capital paid for out of earnings and that contributed by the owner The statute makes no such distinction. Many a utility has put a portion or all of its earnings back into invested capital and we fail to find any authority in the statutes or in principle or precedent for holding that it thereby waives a future return upon such investment.

The Commission in one of its opinions below, and its counsel here, rely upon an extract from the opinion of this court in *Matter of Niagara, Lockport & Ontario Power Co.* v. *Prendergast* (229 App. Div. 295) to support its holding that because the plant had been paid for out of earnings, the village was not entitled to a return thereon. What we said was: " If the plant has been paid for from the profits of its operation, no return upon its value is *required.*" The city of Jamestown had been directed by statute to establish a scale of rates at not less than cost at the place of delivery, and a competing privately owned public utility corporation was seeking to compel the city to include in its rates a return upon the use of the plant. We held that the city was not required to include such return. There minimum rates were being fixed, here the maximum. The city might quite properly waive a return upon the plant if it so desired. Here the village might to so but it has elected otherwise.

The determination and order of the Public Service Commission should be annulled and the matter remitted to the Commission, with costs to the petitioner.

HILL, P. J., and RHODES, J., concur; CRAPSER and HEFFERNAN, JJ., dissent and vote to confirm.

Determination and order annulled, and matter remitted, with fifty dollars costs and disbursements to the petitioner.