In the Matter of THE VILLAGE OF BOONVILLE, Respondent, against MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York, et al., Appellants.

(Argued May 20, 1936; decided October 6, 1936.)

*Sherman C. Ward* for Public Service Commission, appellant.

*Paul Shipman Andrews* for respondent.

FINCH, J.  The Public Service Commission appeals
from an order of the Appellate Division, third judicial
department, annulling by a divided court a determination
and order of the Public Service Commission fixing the
rates to be charged by the municipal lighting plant of the
village of Boonville within the village and in adjacent
territory. The Appellate Division granted leave to
appeal to this court and certified the following question:
" Did the Public Service Commission in its determina-
tion fixing rates in this proceeding properly decide that
as matter of law such rates should not include a return

on the value of the property owned by the village and used and useful in the public service? "

Upon this appeal the facts are not in dispute. The Public Service Commission in two opinions specifically refused to make any determination as to the present value of the Boonville electric plant and fixed rates designed to produce no return as such upon any valuation. The single question presented to the Appellate Division was whether the Public Service Commission as a matter of law could legally deny any return on the value of the property owned by the village, used and useful in the public service in providing electricity.

The Public Service Commission made certain findings of fact which are not questioned upon this appeal. In brief the determination of the Commission was aimed to produce rates which, although not permitting any return to the village on the value of the property, were sufficient to cover all operating expenses and costs, including an amount considered ample for any service provided by municipal officers or employees and the value of all supplies and office space furnished by the village. Also an allowance was made for uncollectible bills and an amount estimated to be equal to all taxes which would have been paid to the village by a private plant of the same extent and character as the municipal plant. In addition there was an allowance to compensate the taxpayers of the village for the risk in the construction of the plant, particularly as to that part of the plant which lies outside the municipal limits, and an amount allegedly sufficient for renewals or minor extensions so as to avoid the necessity of repeated small issues of securities. In short, the Commission claimed that the rates fixed were sufficient not only to produce sums equal to all necessary expenses but to permit in addition a return of approximately $3,400 annually over this amount to take care of unforeseen contingencies.

A short history of the Boonville municipal lighting plant is pertinent.

In 1901 the voters of the village of Boonville adopted a proposition for the construction of a municipal lighting plant. In 1903 village bonds in the sum of $45,000 were sold and the lighting plant was constructed from the proceeds to furnish service both to residents and business in the village. Originally the village plant generated all the electrical energy needed, but with the growth of the demand this plant proved inadequate and arrangements were made to purchase additional current from another utility company. Shortly after the establishment of the village lighting system there arose a considerable demand for service from persons residing in adjacent towns. To provide this service rural lines were constructed by the village until the latter now owns and operates seventy-eight miles of distribution wires outside the village.

From the first and continuously thereafter the electric plant has been a financial success. The original bond issue was completely retired and no other issue has been necessary. All extensions and improvements have been paid for from operating profits or by short-term loans which have been completely repaid from operating profits. Since 1931 the village has had outstanding no lighting plant securities. In addition to retiring the original bond issue and financing all improvements and extensions to the plant, the profits have enabled the village to accumulate by 1934 a surplus of $249,000 and a fixed capital account of $220,088 besides turning over to the general village fund for the expenses of the village $5,000 in each of the last two fiscal years. In addition to these earnings the village for the last five years has provided free both municipal service and street lighting.

In 1932 two bodies of consumers, one living within the village and the other outside the village, filed complaints against the village with the Public Service Commission seeking to reduce the cost of electric service to consumers, claiming that the village when it undertook to render this essential service for the benefit of its inhabitants

had been restricted by the Legislature so that as a matter of law it could not charge a rate, however reasonable as a matter of fact, which would be sufficient to include any return, however small, on the value of the property owned by the village and used and useful in the public service.

These two sets of complaints filed with the Public Service Commission were consolidated into this one proceeding. Hearings in the consolidated case were had at various times over a period of three years. During these hearings the village offered to show that the revenue received during the year ending September 30, 1934, from its municipal lighting plant would equal a return of six and one-tenth per cent upon its original cost and four and one-tenth per cent on a reproduction cost basis. The village also offered to show cost of reproduction new less depreciation of the plant, going concern value, and fair and reasonable value. This evidence the Commission refused to receive. In 1934 the Commission wrote an opinion and a further opinion in 1935 holding in substance that the village was restricted by law to furnishing electricity at cost to consumers and that no return as such may be earned upon the value of the property used in furnishing this service. In its opinion dated February 28, 1935, the Commission said: " The profit motive should not enter into the consideration * * *. It is believed that a just and reasonable rate to be charged for electricity by a municipal plant should be based strictly upon actual costs, including proper and necessary reserves. * * * Again the Commission believes that the making of rates for municipalities should not be encumbered with all the proof as to reproduction cost and the many imaginary and conjectural elements that have been presented to regulatory bodies making rates for private companies." The Commission further held that it was against sound public policy to permit a municipality to accumulate profit over and above suitable reserves so that

such profit might be used to relieve the general tax burden or to promote other municipal projects. The interest of the consumer, so held the Commission, must be paramount to all other interests.

Thereafter the Commission, by order, imposed upon the village a lower schedule of rates. Application was made to the Commission for a rehearing but it was denied. The village then obtained an order of certiorari to review the proceedings of the Public Service Commission. The Appellate Division, third department, as noted, annulled the order and remitted the matter to the Commission (245 App. Div. 468).

The village contends that the Public Service Commission in taking the position that a municipally owned and operated plant must operate at cost and may not earn a profit as such on the value of the property used and useful in the public service has exceeded the powers granted to the Commission by the Legislature and has deprived the village of its property without due process of law in contravention of the provisions of the State and Federal Constitutions.

We note that the village owns and operates its lighting plant in its proprietary as contrasted with its governmental capacity but it is unnecessary to consider the effect, if any, of this distinction. We reserve any questions which may arise under the State or Federal Constitutions since the case at bar turns solely on the construction to be given to the Public Service Law (Cons. Laws, ch. 48). More specifically the question presented here is whether the Legislature has conferred upon the Public Service Commission power and authority to determine as a matter of policy whether rates charged by a municipally owned plant should include any return on the value of the property owned by the village and used and useful in the public service. In other words, is a rate fixed by a municipally owned utility unreasonable solely because it includes in addition to all necessary operating expenses

and an amount for reserves and depreciation, a return by way of profit upon the reasonable value of the property used in the public service?

Apparently this question has never been adjudicated by the courts of this State, although many other jurisdictions have held that a return by way of profit may be obtained.

In the consideration of the powers granted to the Public Service Commission we start with the settled principle that the Commission may exercise only such powers as are conferred upon it by the Legislature. (*People ex rel. Municipal Gas Co.* v. *Public Service Commission,* 224 N. Y. 156, 165.)

The power of the Commission with reference to rates charged for electricity by the village of Boonville is found in the Public Service Law, article 4, section 66, subdivision 5: " Whenever the commission shall be of opinion * * * that the rates * * * of any such person, corporation or municipality are unjust, unreasonable * * * the commission shall determine * * * in the manner provided by and subject to the provisions of section seventy-two of this chapter the just and reasonable rates * * * thereafter to be in force for the service to be furnished."

Section 72 of said law provides in part: " * * * In determining the price to be charged for * * * electricity the commission may consider all facts * * * with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies."

Section 364 of the General Municipal Law (Cons. Laws, ch. 24) provides: " * * * all of the provisions of * * * the public service law, so far as the same are applicable, shall apply to a municipal corporation."

The village of Boonville concedes the jurisdiction of the Public Service Commission to regulate rates charged by

it for electricity so as to prevent unreasonable rates. Even without this concession the right to regulate utility rates against unreasonable and unjust charges is a power vested in the State and may be delegated to the Public Service Commission. (*Matter of Trustees of Vil. of Saratoga Springs* v. *Saratoga Gas, Elec. L. & P. Co.*, 191 N. Y. 123.)

It is elementary that privately owned utilities must be allowed a fair return on the value of their property used and useful in the public service. (*Smyth* v. *Ames*, 169 U. S. 466; *Municipal Gas Co.* v. *Public Service Commission*, 225 N. Y. 89; *Minnesota Rate Cases*, 230 U. S. 352.)

The State has authorized villages to establish electric light plants (Village Law; Cons. Laws, ch. 64, art. 10) and has given to the villages the power in the first instance to fix rates (Village Law, § 246). The Public Service Commission may only interfere when the rates so established are unjust or unreasonable. (Public Service Law, § 66, subd. 5.) The statute imposes a duty on the Public Service Commission to supervise rates for the same reason in the case of a municipally owned utility as in the case of a privately owned utility, namely, to prevent the fixing of rates that are unjust and unreasonable. Also the statute provides that the rate must be fixed by the Public Service Commission in each instance " * * * with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies." (§ 72.) These words of the statute negative the claim of the Public Service Commission that in the case of a municipality it may disregard entirely any return on capital actually expended. The Public Service Commission justifies its action because the municipality has paid back the capital which it borrowed. But if a privately owned utility had paid off its indebtedness, it would still be entitled to a fair return upon the value of the property. In the absence of any statutory prohibition a municipally owned electric

plant may not be penalized for its thrift in putting back as invested capital all or a portion of its earnings. Nothing in the statute authorizes the Public Service Commission to treat differently a privately owned and a municipally owned utility so as to allow the former a reasonable profit and the latter no profit. If power is given to the Public Service Commission to deny any return by way of profit to a municipally owned utility such authority must be found in the statute. Yet not only do we find no attempt by the Legislature to state a different rule but on the contrary identical language is used as to each class of utility.

We are only in a position now to determine upon this record that there must be allowed some return to the municipality upon the value of its electric plant used and useful in the public service. The rate of return and the method of arriving at this value we leave in the first instance to the Public Service Commission as the expert fact finding body. Upon this record before us the sole issue is whether or not any return at all should be allowed, and the facts have been collated and presented with this issue solely in view. Upon this data and this record the Public Service Commission has decided that as between no return by way of profit and some return, as a matter of law no return should be allowed. The issue should not have been between no return and some return but what is a reasonable return to the municipality. A court obviously is not equipped to collate the necessary data and facts upon these issues and, therefore, the matter must be remitted to the Public Service Commission.

The order should be affirmed, with costs, and the question certified answered in the negative.

CRANE, Ch. J. (concurring in result). The right of a village to construct and maintain its own municipal electric light plant is dependent upon the will of the

Legislature. By article 14-A of the General Municipal Law (Cons. Laws, ch. 24) this right has been specifically conferred upon municipalities. As the right originates with 'the Legislature it may limit the use and exercise of this right as it sees fit. A village is not deprived of its property, within the meaning of the Federal Constitution, when the Legislature or any of its agencies fixes the rates which municipal light plants may charge. If, therefore, the Legislature should provide that municipalities taking over the electric light business should run it at cost, and that the consumers should not be charged such a rate as to give to the municipality a profit over and above cost of operation, such an enactment would be legal and constitutional.

I can find no limitation which the Legislature has placed upon the municipalities regarding rates, except that contained in the Public Service Law (Cons. Laws, ch. 48). The power of the Commission, with reference to the rates charged for electricity by villages, may be found in article 4, section 66, subdivision 5 of this law, which reads in part as follows: " * * * Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates, charges or classifications or the acts or regulations of any such person, corporation or municipality are unjust, unreasonable, unjustly discriminatory or unduly preferential or in anywise in violation of any provision of law, the commission shall determine and prescribe in the manner provided by and subject to the provisions of section seventy-two of this chapter the just and reasonable rates, charges and classifications thereafter to be in force for the service to be furnished * * *."

Article 4, section 72, of the Public Service Law, which is the section referred to in the excerpt just quoted, provides in part: .

" * * * After a hearing and after such an investigation as shall have been made by the commission or its officers, agents, examiners or inspectors, the commission

may, by order, fix just and reasonable prices, rates and charges for gas or electricity to be charged by such corporation or person, for the service to be furnished * * *.

" * * * In determining the price to be charged for gas or electricity the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question although not set forth in the complaint and not within the allegations contained therein, with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies."

Apparently the Legislature has treated municipalities and private enterprises alike and the rate is to be determined in the same way and according to the same elements in both cases.

The appellants strenuously urge that when the Legislature permitted municipal corporations to establish electric light plants and enter into this kind of public service, it did so for the purpose of reducing rates to consumers upon a co-operative plan, furnishing them electric current at cost and without any idea or purpose that the municipality was to enter into a business venture for profit. If this were the idea, the Legislature has failed to express it. We should wait until the Legislature's intention becomes quite apparent, and not give a strained construction to the Public Service Law for the purpose of accomplishing what we may think the State of New York intended to do.

For these reasons I am for the affirmance of the determination of the Appellate Division. The question certified should be answered in the negative.

LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur with FINCH, J.; CRANE, Ch. J., concurs in result in separate opinion in which LOUGHRAN, J., concurs.

Order affirmed, etc.